## El Pueblo *v.* Bianchi, Jr. et al.

Apelación procedente de la Corte de Distrito de Mayagüez.

No. 446.—Resuelto en junio 24, 1912.

Derecho Penal—Comisión del Delito.—Cuando se imputa a dos acusados el delito de acometimiento y agresión consistente en haber causado grave daño corporal a una persona, tirándole con cáscaras de huevos llenos de agua, y de la prueba resulta que los dos actuaron juntos en la comisión de dicho acto ilegal, ambos son autores de la comisión del delito de acuerdo con el artículo 36 del Código de Enjuiciamiento Criminal, sin que sea necesario probar cuál de los dos lanzó la cáscara del huevo.

Id.—Intención Criminal—Presunción—Juego de Carnaval con Cáscaras de Huevos Llenas de Agua.—El lanzar cáscaras de huevos llenas de agua contra una persona está prohibido por la ley y constituye un acto ilegal y es *malum in se.* Es una presunción legal que toda persona que voluntariamente ejecuta un acto intenta la realización de las consecuencias naturales y pro-

bables de dicho acto y todo acto ilegal se presume cometido con intención maliciosa y punible, sin que pueda alegarse como excusa el que dicho acto se ejecutó jugando carnaval y el ser una costumbre muy antigua.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. José de Diego y Alfredo Arnaldo.*

Abogado del apelado: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

Habiéndose originado este caso en la corte municipal de Mayagüez, pasó luego a la corte de distrito de ese distrito en donde se celebró un nuevo juicio y dictó sentencia contra los apelantes, que fueron condenados al pago de una multa de $50 cada uno y las costas, y en defecto de dicho pago a prisión alternativa en la cárcel, de un día por cada dollar que dejaran de satisfacer. Esta sentencia fué dictada en 20 de marzo último.

La denuncia expresa que los acusados voluntaria y criminalmente y con intención de causarle grave daño corporal a la Srta. Sara Williams, le acometieron y agredieron tirándole con objetos de materias duras (huevos), y causándole un golpe de consideración sobre el ojo derecho, por lo que posteriormente tuvo necesidad de ser atendida por un médico.

En esta apelación dos son los fundamentos que se han presentado por los cuales se solicita la revocación de la sentencia. Primero, la insuficiencia de la prueba; y segundo, la carencia de intención criminal en el acto realizado.

Hemos examinado cuidadosamente la prueba presentada en el juicio, en la cual se fundó la acusación. La defensa no presentó ninguna. Cinco testigos declararon con respecto al acometimiento y agresión. El primer testigo fué la Srta. Sara Williams, profesora de instrucción pública, quien declaró que en la noche del 7 de febrero último se encontraba en el balcón de la casa del Sr. Monafeld que está situada en la calle de Méndez Vigo; que vió un coche que venía y recibió

un fuerte golpe en un ojo con un cascarón de huevo que estaba lleno de agua o de algún otro líquido, causándole esto un daño de tal modo que se le ennegreció el ojo al día siguiente, habiendo estado completamente ciega por espacio de dos días después y que durante el juicio veía con mucha dificultad.

El testigo Santiago Birón, policía insular, declaró que en la noche del día 7 de febrero a las 8 y media se encontraba de servicio en Mayagüez, a caballo, para evitar el juego de carnaval con cascarones de huevo. Que estando frente al Hotel América pasó un coche frente a él que conducía a Juan Bianchi, Jr. y a Francisco Llavat que son los acusados y al pasar por la casa de Mr. Monafeld vió que ellos tiraron algo que él supuso serían cascarones de huevos y que en aquel momento gritó una mujer, siendo ésta esa señorita americana que estaba allí con la mano puesta en la frente. Que siguió en persecución del coche, lo paró frente a la casa del Sr. de Diego, habiendo encontrado allí una caja que contenía alrededor de 100 cascarones de huevo que contenían agua y harina.

El Doctor Perea Fajardo, médico y oculista, declaró que la noche del 7 de febrero asistió a la Srta. Sara Williams que había recibido un golpe y tenía una fuerte equimosis o contusión en el borde superior e inferior del ojo derecho. Que esa noche solamente formuló una receta, pero al día siguiente le hizo un examen cuidadoso en el ojo, encontrando que había recibido una fuerte contusión en el iris y en la retina, habiendo tenido en la retina una pequeña hemorragia que le impedía ver y que le produjo muy fuertes dolores de cabeza.

Los dos testigos Gerardo Monafeld y Antonio Quintana corroboraron las declaraciones de los tres anteriores.

De esta prueba puede inferirse lógicamente que el día 7 de febrero último se encontraban ellos jugando carnaval en Mayagüez, en cuyo juego tomó parte el acusado, consistiendo esta participación en pasar por la calle de Méndez Vigo tirando cascarones de huevo llenos de agua a personas

que pasaban por la calle y sobre aquellas que se encontraban en los balcones de las casas.   El policía de servicio observó que el acusado pasó en un coche frente a la casa en donde residía la Srta. Williams; que un objeto se le tiró desde el coche, oyendo al mismo tiempo un grito de una mujer y viendo a la Srta. Williams ponerse las manos sobre la cara. Corrió detrás del coche alcanzándolo y parándolo, habiendo encontrado dentro del mismo dos cajas una de las cuales contenía alrededor de 100 cascarones llenos de agua y la otra con harina.   La señorita perjudicada recibió un fuerte golpe en el ojo derecho con un cascarón de huevo lleno de agua que se le tiró desde la calle.   Las declaraciones de la perjudicada y del policía corroboradas por la del médico y otros dos testigos justifican la conclusión a que puede llegarse lógicamente, de que el cascarón de huevo fué tirado por el acusado o por uno de ellos.   No importa saber cuál de ellos fué el que lo tiró; ambos realizaban un acto ilegal, siendo, por tanto, los dos autores en la comisión del delito. (Art. 36 del Código de Enjuiciamiento Criminal.)   Debemos resolver que existió la intención criminal en este caso.   Es una presunción legal que un acto ilegal se comete con intención ilegal, y también, de que cada persona conoce las consecuencias naturales y probables de sus propios actos ejecutados voluntariamente.

Según nuestro estatuto una intención maliciosa y culpable se presume de la deliberada comisión de un acto ilegal con el fin de perjudicar a otro.   (Ley de Evidencia, art. 101.)

Nuestro Código Penal, artículo 12, declara que una intención maliciosa y criminal se presume por la manera y deliberación con que se intente o cometa un acto ilegal con el propósito de perjudicar a otro.

Además, el acto de tirar cascarones de huevo realizado por los acusados es uno prohibido por la ley, y al encontrarse dichos acusados ocupados en este juego que alegan era uno inocente, estaban infringiendo la ley; además, el acto realizado por ellos se llevó a efecto de modo intencional, y mali-

ciosamente, y era un acto ilegal *malum in se*. El daño fué la consecuencia natural y probable de la ejecución del acto, y la falta de intención por parte de los acusados de causar algún daño no puede presentarse como excusa legal por la infracción de la ley.   Podemos hacer referencia en apoyo de esta doctrina a un caso de Georgia, o sea el de *Hill* v. *The State,* anotado en 36 Am. Rep., 120.   Ese caso es muy semejante al de autos y la opinión es clara y extensa, habiéndose expresado la corte en el curso de dicha opinión en la forma siguiente:

"La única defensa es que él tiró de juego, sin intención maliciosa o dañina y sin tratar de causar daño o siquiera de proporcionar un golpe, confiando en la habilidad que tenía su compañero de escuela para taparse * * *.   El tirar piedras a otros por gusto es un juego peligroso, porque la tendencia de este juego es herir o proporcionar golpes, y no hay seguridad alguna de que en un determinado caso el daño sea ligero más bien que grave.   Cuando se ha tirado una piedra y ha salido con toda la fuerza, el daño que pueda ocasionar en donde dé no es una cuestión de cálculo, sino en gran parte de mera casualidad."   (*Hill* v. *The State,* 36 Am. Reports, 120.)

Los casos de Texas a que se ha hecho referencia por los apelantes no sostienen su alegación.   El caso de *Ware* v. *The State,* 24 Texas Court of Appeals Reports, dice:

"La intención de causar daño se presumirá cuando un daño ha sido causado, pero cuando no se ha causado éste, no habrá tal presunción, debiéndose probar la intención."   (*Ware* v. *State,* 24 Texas Court of Appeals, 521.)

El caso de *Donaldson* v. *The State* dice lo siguiente:

"Para que exista acometimiento y agresión, la intención de causar daño debe concurrir con el empleo de la violencia ilegal sobre la persona contra la cual se realiza el acometimiento; pero el más mínimo grado de fuerza es bastante para que haya violencia y el daño que se haya tratado de realizar puede ser a los sentimientos o la mente de este último, lo mismo que en cuanto a la persona material.   Si tal daño fuera la consecuencia natural de la violencia empleada, la intención ilegal se presume a menos que la presunción esté rechazada por la prueba."   (*Donaldson* v. *The State,* 10 Tex. Court of Appeals, 307.)

No existe nada en la prueba que aparece en los autos para que se rechace la presunción del daño por parte de los apelantes. El hecho de que estuvieran jugando carnaval, y que es una costumbre establecida desde hace tiempo el tirar cascarones de huevos y otras sustancias duras a los observadores, no es una disculpa para que la ley se infrinja, y tal costumbre no rechaza la presunción de que las partes tuvieron por objeto las consecuencias naturales de los actos celebrados. El castigo fijado por la corte sentenciadora fué razonable y justo y la sentencia debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.