EL PUEBLO, DEMANDANTE Y APELADO, *v.* DELGADO, ACUSADO Y APELANTE.

Apelación procedente de la Corte de Distrito de Humacao en causa por delito contra la justicia pública.

No. 1879.—Resuelto en abril 27, 1922.

DELITO CONTRA LA JUSTICIA PÚBLICA — MOCIÓN DE *Nonsuit* — PRUEBA INSUFICIENTE.—El denegar una moción de sobreseimiento, una excepción a la prueba, o una moción de *nonsuit*, aun cuando sea errónea, es un error que no perjudica y por consiguiente no puede ser causa para una revocación siempre que subsiguientemente se presente por cualquiera de las partes prueba que supla la omisión.

ID. — PRUEBA INSUFICIENTE. — A, portando una botella de ron, se dirigía a un grupo de personas que había en la calle, entre las cuales estaba B. Un policía, esperando ulteriores acontecimientos vigilaba a A y seguía detrás

de él a cierta distancia. Al llegar A al grupo, sin que el policía le hubiera dado alcance, B le quitó la botella y la rompió contra el suelo. Denunciado y convicto B por una infracción al artículo 137 del Código Penal, *se resolvió:* que en tales circunstancias no puede concluirse que el acusado hizo resistencia, ni demoró ni obstruyó al funcionario en el cumplimiento de su deber.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. F. Cervoni.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

El artículo 137 del Código Penal prescribe que "Toda persona que voluntariamente resistiere, demorare, o estorbare a cualquier funcionario público en el cumplimiento de alguna de las obligaciones de su cargo, o al tratar de cumplirla, siempre que no hubiere otra pena señalada, incurrirá en multa máxima de cinco mil (5,000) dollars y cárcel por un término máximo de un año."

El apelante fué declarado culpable del delito así definido, y condenado a pagar una multa de veinte dólares, y costas y a cumplir cinco días de cárcel. La denuncia alega que "el acusado Juan Delgado, voluntaria y maliciosamente, en momentos que el policía denunciante en este caso, trataba de ocupar a Cecilio Rivera, una botella que contenía ron, bebida embriagante, siendo objeto de tráfico clandestino por parte de Cecilio Rivera, la cual fué arrebatada de las manos de éste, por el acusado, quien la destrozó tirándola al suelo, entorpeciendo de este modo al policía denunciante en el libre funcionamiento de las obligaciones de su cargo."

Claramente que la denuncia, en tanto sugiere una infracción de la Ley Volstead se funda en la teoría de una venta de licor, o tal vez de un ofrecimiento de venta. La prueba, al celebrarse el juicio *de novo* en la corte de distrito, en lo que revela la comisión de algún delito por el cual el individuo de quien se sospechaba pudo haber sido arrestado, indica una transportación ilegal de licor.

En cierta noche del mes de septiembre de 1921 estaban de servicio en la calle Cristóbal Colón de Yabucoa, hacia la salida para Maunabo, un cabo de la Policía Insular y dos guardias, cuando vieron que salía un hombre de un callejón con una botella en la mano. El aparente deseo de esconder la botella parece produjo sospechas y llamó la atención, que era precisamente lo que trataba de evitarse. El cabo ordenó al policía Rodríguez que adelantara el paso hacia este furtivo portador de un contrabando. Rodríguez, que procedió a cumplir con estas instrucciones, dice que cuando el portador de la botella, Cecilio Rivera, llegó a un grupo de personas, entre las que estaba el apelante Juan Delgado, Juan dijo a Cecilio "dame acá esa botella" y "la cogió y la restalló contra el suelo;" que habiendo llegado al sitio del suceso el cabo y los otros guardias, el testigo recogió la botella rota que todavía contenía un poco del líquido en el fondo, lo probó y vió que era ron que picaba. El cabo también lo probó. El testigo iba a arrestar a Cecilio por transportar ron. El no fué arrestado, pues no había cometido ningún delito toda vez que el ron no fué ocupado en su poder.

El otro policía, Justo Colón, declaró que siguió tras Rodríguez hasta la calle y el cabo iba detrás. Que al llegar a la salida para Maunabo, Rodríguez "trató de quitarle una botella de ron que llevaba Cecilio Rivera, pero el acusado le cogió la botella a Cecilio y se la rompió." El propio Rodríguez no declara acerca de otra cosa que no sea de la intención no manifestada de coger la botella, y la tendencia general de toda la prueba indica que él simplemente iba siguiendo los pasos a una persona sospechosa. La declaración de Colón está sujeta a esta interpretación, a falta de todo detalle o especificación de lo que el testigo realmente vió y oyó, y propiamente puede interpretarse de tal modo. En el examen de repreguntas declara que los fragmentos de la botella no fueron presentados como prueba en la corte municipal porque no se sabía que se necesitaba la botella ese día,

pero que pudieron probar que la botella contenía ron "porque el testigo olió la botella." El cabo declara que "al aproximarse Cecilio al acusado, a cierta distancia del policía, Juan Delgado le quitó la botella y la restalló contra el suelo.

Este testigo dice además "que la botella fué presentada como prueba en la Corte Municipal de Yabucoa;" que el testigo está "seguro de que la botella fué presentada como prueba en Yabucoa." Entonces el abogado del acusado pidió a la corte que dictara una orden para mostrar causa por qué el testigo no debía ser procesado por perjurio mediante desacato; y luego, en contestación a las nuevas preguntas del fiscal, el testigo explicó que no declaró en la corte municipal; "que el testigo había dejado la botella en el cuartel de la policía para que la presentaran como prueba y por eso creía que la habían presentado."

La defensa consistió en las declaraciones de dos testigos, a saber:

"Juan Rosa.—Declara que la noche de autos se encontraba reunido con varios amigos en Yabucoa, a la salida para Maunabo, cuando llegó Cecilio Rivera, a la reunión, y el policía Rodríguez; que al llegar Rodríguez, dijo: cabo, venga acá. Y el cabo, que estaba a alguna distancia con otro policía, llegaron al grupo y el policía Rodríguez le dijo: éste traía una botella y éste se la quitó y la botó. Entonces el policía registró a Cecilio, no le halló nada y el cabo mandó meter en la cárcel a Juan Delgado. Que allí no había botellas.

"Juan Ortiz.—Declara lo mismo que el anterior, pero dice que al momento de llegar Cecilio a la reunión de amigos que estaban a la salida para Maunabo, llegó el policía Rodríguez y le dijo: entrégueme la botella de ron. Cecilio contestó que no tenía ninguna botella y entonces el guardia lo registró no encontrándole nada. Que entonces el guardia llamó al cabo que estaba a alguna distancia y el cabo ordenó el arresto de Juan Delgado. Que allí no había botella ninguna de ron."

El único de los errores señalados que debemos considerar es el haber desestimado la corte la moción de sobreseimiento (*nonsuit*) hecha al terminarse la prueba del Pueblo.

El fiscal cita el caso de *El Pueblo* v. *Ojeda,* 26 D. P. R. 438, en el que resolvimos, haciendo cita del sumario, que "Cuando un acusado al cual se le ha desestimado una moción de *nonsuit,* introduce su prueba, este paso equivale a una renuncia de su moción, ya que la regla es idéntica en casos civiles y criminales."

Pero esta ligera referencia al principio elemental de "*estoppel*" envuelto, presupone que la prueba así presentada por el acusado suministra todos aquellos elementos de que pudiera adolocer el caso como fué presentado por el demandante, y por tanto, que no ha sido menoscabado ningún derecho sustancial del acusado.

Una verdadera exposición de la regla sería que la negativa a sobreseer o desestimación de una excepción perentoria a la prueba, o la negativa de una moción de sobreseimiento por falta de prueba suficiente, aún cuando fuera errónea, es error que no perjudica y por tanto no puede servir de base para una revocación, siempre que la prueba que suple la omisión y que así corrige el defecto se haya presentado luego por cualquiera de las partes.  4 *Corpus Juris,* p. 1020, secciones 3005–07; 9 R. C. L. 215, sección 39.

Ni es tampoco de aplicación el caso de *El Pueblo* v. *Rivera,* 25 D. P. R. 752, citado por el fiscal.  En ese caso la cuestión era si el artículo 137 es aplicable solamente a casos en que está envuelta la resistencia que se opone a los funcionarios de orden público al hacer arrestos, y a los funcionarios de las cortes al cumplimentar órdenes judiciales legales, o si debe declararse que dicho artículo comprende a un inspector de sanidad en el cumplimiento de sus deberes oficiales al tomar muestras de leche que está expuesta a la venta pública, para su análisis químico con el fin de determinar si ha sido o no adulterada.  La mayoría de este tribunal fué de este último criterio, pero no estamos dispuestos a dar a la regla tal alcance que comprenda toda tentativa concebible para anticipar la posible ocupación y destrucción

de un contrabando, sin tener en cuenta su valor, probatorio o utilidad como prueba.

En este caso la prueba demuestra claramente, como lo indicaría el sentido común en ausencia de toda prueba, que no eran necesarios los exámenes de laboratorio para determinar la verdadera naturaleza del líquido contenido en la botella. El acto del acusado al romper lo que parece haber sido una botella en buen estado, cualquiera que haya sido el motivo o idea particular que tuviese del probable efecto legal de tal actuación, tendía realmente a corroborar la teoría puesta en práctica y por virtud de la cual procedieron los representantes de la ley, y a robustecer el caso contra Cecilio, por el mismo principio de que la fuga de un prófugo de la justicia por lo general se considera como una circunstancia inculpatoria. Era en verdad igual a los síntomas manifestados por el propio Cecilio, que llamaron primero la atención del cabo y se utilizaron con provecho por el fiscal en el presente caso. Basado en esta misma creencia el cabo instintivamente se dijo a sí mismo, según admite en su declaración: ''Caramba, a qué obedece que este hombre haya hecho eso? Nada, que no quería que le ocuparan la botella, porque el ron me supongo que era para ellos mismos. Que ordenó que lo trajeran a la cárcel.''

El arresto por transportar licor pudo hacerse en cualquier momento después de salir Cecilio del callejón y no se hizo esfuerzo por arrestarle al ser rota la botella. La prueba demuestra fuera de toda duda, que la policía tenía meramente al presunto Ganymede bajo vigilancia y esperaba ulteriores acontecimientos. No hubo intervención, obstrucción u ocultación con nada que se estuviese llevando a cabo. Sin duda que ellos no esperaban el cambio repentino en el curso de los sucesos, pero el artículo 137 no tiene por objeto castigar a una persona cuya conducta no es la que de ella se espera, por contraria que pueda ser para la policía. Admi-

tiendo en pro del argumento que era el deber oficial de dichos policías perseguir no solamente al sospechoso violador de un estatuto federal, sino capturar el envase intacto, el no obtenerse este resultado se debió tanto a sus actuaciones dilatorias, como a cualquier cosa que hubiera hecho el acusado en este caso. Si el acusado con razón se indignó por la conducta censurable de Cecilio, ya se considere esto como una pura y simple infracción de la ley, o que envuelve complicaciones al parecer inminentes para el acusado y sus amigos, el acto de romper la botella claramente que no fué un delito. Si la actuación de que se queja el denunciante se debió al deseo de proteger a Cecilio o al acusado y a sus compañeros de las probables consecuencias de sus mismas relaciones criminosas con la transacción, entonces pudo haber sido culpable el acusado de algún delito, pero no del definido en el artículo 137. De todos modos el único resultado palpable era envolver a Cecilio de una manera más intrincada en la red de las circunstancias ya preparada a su derredor y hacer más clara la sospecha que ya había acerca del acusado y sus amigos. Desde ningún punto de vista podemos concluir que el acusado voluntariamente hizo resistencia, demoró u obstruyó a ningún funcionario público en el cumplimiento o al tratar de cumplir con algún deber de su cargo.

La sentencia apelada debe ser revocada.

> *Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente del Toro y Asociado Aldrey.

El Juez Asociado Sr. Wolf firmó "Conforme con la sentencia."

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.

OPINIÓN CONCURRENTE DEL JUEZ ASOCIADO SR. WOLF.

Estoy de acuerdo con la anterior sentencia y conforme con el razonamiento de la Opinión menos en cuánto en ella se trata de establecer una diferencia entre el presente caso y el de *El Pueblo* v. *Rivera,* 25 D. P. R. 752. En ese caso disentí y la razón que tuve para disentir fué que no había envuelta ninguna resistencia a un funcionario cuando un acusado temiendo a un arresto y condena destruyó una botella de leche  El quizás podría estar destruyendo prueba. Convengo particularmente en que el artículo 137 no castiga a una persona cuya conducta meramente no se espera de él, pero sostengo que el mismo razonamiento era aplicable en el caso de la leche y que el presente caso revoca el de *El Pueblo* v. *Rivera, supra.*