EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARMELO RIVAS DE JESÚS y MARGARO MELÉNDEZ, acusados y apelantes.

Núm. 13004.—*Sometido:* Marzo 10, 1948. *Resuelto:* Marzo 19, 1948.

*Leopoldo Rojas Flores,* abogado de los apelantes; *Hon. Procurador General Luis Negrón Fernández y J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Contra Carmelo Rivas de Jesús y Margaro Meléndez el fiscal del distrito de Ponce formuló acusación por el delito de asesinato en primer grado, fundado en que allá para uno de los días del mes de febrero de 1944 éstos voluntaria e ilegalmente, con malicia, premeditación y deliberación, dieron muerte ilegal al ser humano Tomás Ortega, atacándole con piedras y con un puñal e infiriéndole contusiones y heridas a consecuencia de las cuales el referido Tomás Ortega falleció casi instantáneamente. Celebrado el juicio conjuntamente, el jurado rindió veredicto condenatorio contra ambos acusados, habiendo éstos apelado ante nos de la sentencia de reclusión perpetua dictada en su contra.

El primer error señalado en apoyo de su recurso es al efecto de que la corte inferior erró al denegar la moción de *nonsuit* presentada por el acusado Margaro Meléndez.

Como una moción de nonsuit no es otra cosa que una excepción perentoria (*demurrer*) a la prueba y a los fines de la misma se admite la veracidad de la que ha desfilado,[1] pasaremos inmediatamente a analizar la evidencia que se ofreció por El Pueblo.

*Ramón C. Umpierre* declaró que es médico-cirujano; que allá para febrero de 1944 ejercía su profesión en Orocovis e intervino con el cadáver de Tomás Ortega, quien presentaba una herida punzante en el lado izquierdo del pecho, la que le atravesó la aorta y era mortal por necesidad; que esa herida fué producida por arma blanca y que además Ortega presentaba una contusión en el pecho.

*María Marrero* es la viuda del occiso. En 6 de febrero de 1944, como a las tres y media de la tarde, ella vió que Ortega venía en dirección a su casa con una comprita; que Carmelo Rivas de Jesús y Margaro Meléndez estaban escondidos en una quebrada y cuando Ortega pasó ambos se le "esmandaron" detrás; que vió entonces que Ortega se paró y al pararse éste Margaro sacó una piedra, le tiró y le dió en el pecho; que al recibir la pedrada Ortega cayó al suelo boca arriba y entonces Carmelo Rivas le dió una puñalada en el pecho, dejando a Ortega muerto.

*José Santiago* y *Heliodoro Cruz Ramos* fueron a la casa de Ortega en busca de éste para ofrecerle cierto trabajo de carpintería y en esos momentos oyeron unos gritos. Corrieron al sitio de donde éstos salían, encontrando a Ortega muerto en el suelo y a la esposa encima gritando: "lo mataron". Como a un metro estaba Carmelo Rivas de Jesús con un cuchillo en la mano y decía: "Así se mata a un perro, para que no moleste más." Margaro Meléndez estaba parado, como a ocho o diez metros de distancia y no dijo una sola palabra.

*Visitación Rodríguez* se hallaba en su casa y sintió unos gritos. Acudió a ver qué ocurría y cuando llegó vió a Ma-

---

[1] *Villanueva* v. *Suárez*, 41 D.P.R. 40; *Cruz* v. *Martínez*, 29 D.P.R. 66; *Méndez* v. *El Banco Comercial*, 26 D.P.R. 647.

ría Marrero llorando sobre el cadáver de Tomás Ortega. Ésta le dijo que Margaro Meléndez y Carmelo Rivas lo habían matado. Nadie más estaba allí. Ortega tenía un cardenal en el pecho.

*Rafael Suárez* es policía insular y le ocupó el puñal a Carmelo Rivas.

La anterior es una ligera síntesis de la prueba de cargo. No hay duda de que ella tiende a conectar de manera directa al acusado Margaro Meléndez con la comisión del delito. La declararación de María Marrero lo demuestra así de manera palpable. José Santiago y Heliodoro Cruz Ramos, quienes acudieron al sitio de los hechos al oír los gritos de la Marrero, encontraron a Meléndez a ocho o diez metros del cadáver. Visitación Rodríguez, que acudió también al oír los gritos de María Marrero, manifestó asimismo que ésta le dijo que Margaro Meléndez y Carmelo Rivas lo habían matado. Esta manifestación del testigo Rodríguez fué admitida por la corte sin objeción alguna de la defensa. El Dr. Umpierre también se refirió a una herida contusa que Ortega tenía en el pecho.

Apreciada la prueba que antecede la corte tuvo ante sí un caso prima facie contra Margaro Meléndez. A los efectos de una moción de nonsuit, repetimos, la prueba de El Pueblo ha de tenerse como cierta en su integridad y para que ella sea declarada sin lugar basta que haya meramente un caso prima facie. La prueba aducida era más que suficiente para presentar ese caso prima facie. *Pueblo v. Dávila,* 53 D.P.R. 234.

Por otra parte, es principio general de derecho que se tiene por renunciada una moción de nonsuit presentada por un acusado cuando éste luego de ser su moción declarada sin lugar, aduce prueba en apoyo de su defensa. Si bien en este caso reiteradamente los letrados que representaban a ambos acusados manifestaron que para ser consecuentes con su moción de nonsuit no presentarían prueba de clase

alguna en favor de Margaro Meléndez, sin embargo, la realidad demuestra que mientras declaraba el coacusado Carmelo Rivas de Jesús, uno de los abogados de la defensa preguntó al testigo: "¿Mientras todo eso ocurría entre usted y Tomás Ortega, dónde estaba Margaro?", contestando Rivas: "En la casa." Luego, el mismo letrado preguntó al testigo: "¿Participó en algo?", contestando el testigo: "No, señor." A esto siguió el incidente que copiamos *verbatim:*

"¿Intervino en algo?
Testigo: No, señor.
¿Le lanzó alguna piedra?
No, señor.
¿Peleó con el interfecto?
No, señor.
¿Hubo cambio de palabras?
No, señor.
¿Está seguro de eso?
Sí, señor." (Tr. Ev., pág. 86).

Este interrogatorio del coacusado Rivas de Jesús por uno de los letrados de la defensa no fué sino un esfuerzo por parte suya de demostrar a la corte y a los señores del jurado que Margaro Meléndez no había cometido el delito de asesinato que se le imputaba. Ello equivalió, sin duda, a ofrecimiento de prueba en favor de Meléndez y a una renuncia, por ende, de la moción de nonsuit que poco antes se había presentado en su favor. *Pueblo* v. *Zayas Ortiz,* 65 D.P.R. 538, 539; *Pueblo* v. *Méndez,* 39 D.P.R. 930; *Pueblo* v. *Cartagena,* 37 D.P.R. 457; *Pueblo* v. *Delgado,* 30 D.P.R. 407. El primer error señalado no ha sido, pues, cometido.

■■ Sostiene además el acusado Margaro Meléndez, que la corte inferior cometió error al denegar su petición de que se instruyera al jurado en el sentido de que rindiera un veredicto absolutorio. La prueba que en esencia hemos reseñado más arriba al discutir el primer señalamiento nos convence de que el segundo error imputado tampoco ha sido co-

metido. Al resolver la moción al efecto presentádale por la defensa el juez de la corte inferior se expresó así:

"Dice la defensa, en la primera parte de su moción para que se ordene un verdicto absolutorio a favor de Margaro Meléndez, que hay solamente un testigo del Pueblo que conecta al acusado con los hechos del caso. Eso no es cierto. Los propios testigos de defensa conectan a Margaro con el caso.

"Se ha declarado por un testigo sobre una pelea a los puños frente a la casa de Sierra, y que con el otro testigo de la defensa intervino para separarlos. De modo, que ya vemos ahí, con el propio testigo de la defensa, conectado con una parte de la transacción. Ahora, en cuanto al resto de la transacción, la viuda dice que ella vió cuando Margaro y el otro acusado salían de una quebrada donde estaban esperando a ver a su marido; que le salieron por la espalda y se volteó; que él hizo eso porque oyó los pasos, y al voltearse, Margaro le dió una pedrada por el pecho, que lo derribó, declaración confirmada, en el aspecto de la pedrada, por el testigo del Pueblo, Dr. Umpierre. De modo, que hay algunos testigos que conectan al acusado Margaro Meléndez con los hechos del caso.

"Ahora, si la testigo Viuda de Ortega dijo la verdad, o si por el contrario quienes dijeron la verdad fueron los testigos de la defensa, o sea, aquel testigo que limitó la participación de Margaro a la mera intervención para hacer la paz, ésa es una cuestión que va el jurado a dirimir y a resolver, ya que son los jueces de la credibilidad de los testigos. Hay testigos del Pueblo que dicen que cuando llegaron vieron al acusado Carmelo Rivas de Jesús parado con el puñal, un poco retirado, y al otro acusado Margaro Meléndez, que estaba quieto, y que no hacía nada. Esos testigos también conectan a Margaro Meléndez, en el sentido de estar en el preciso sitio donde ocurrió el hecho y en que apareció el cadáver; donde encontraron los testigos el

cadáver de Ortega. Ahora, si esos testigos no dicen la verdad, y el que dice la verdad es el último testigo del Pueblo, que dice que fué el primero en llegar, y cuando llegó estaba la víctima y los acusados se habían ido; si esos testigos no dicen la verdad, y el que la dice es el último testigo del Pueblo, llamado Visitación Rodríguez, eso el jurado deberá determinarlo. Eso es en cuanto a la primera parte. Eso deberá resolverlo el jurado. Hay prueba a considerar . . . . Eso es lo que el jurado debe determinar, si real y efectivamente los dos cometieron el acto. Ésa es una cuestión que debe resolverla el jurado, y, por lo tanto, declaro sin lugar la moción para ordenar un veredicto absolutorio en relación con el acusado Margaro Meléndez.''

La corte procedió acertadamente al actuar en la forma en que lo hizo. En las causas criminales vistas ante jurado el llamado a aquilatar la prueba lo es realmente el jurado. *Pueblo* v. *Rivera*, 67 D.P.R. 194; *Pueblo* v. *González*, 61 D.P.R. 347. Y cuando se presenta una moción solicitando del juez que preside la causa que instruya al jurado que rinda un veredicto absolutorio contra un acusado, es el deber del juez abstenerse de así hacerlo y permitir que sea el jurado el que aprecie los hechos, a no ser que dicho juez esté plenamente convencido de que la prueba es insuficiente para demostrar la culpabilidad del acusado fuera de toda duda razonable.

Finalmente sostienen los apelantes que el jurado erró crasamente al apreciar la prueba en cuanto a Margaro Meléndez, así como también en cuanto a Carmelo Rivas de Jesús.

La prueba de El Pueblo ya ha sido reseñada. La de la defensa consistió en las declaraciones de Carmelo Rivas de Jesús y Antonio Sierra. Según ambos, el acusado Carmelo Rivas de Jesús actuó en defensa propia, ya que al verse atacado por Tomás Ortega, su propia vida hubiera peli-

grado de no haberle dado muerte a aquél. Meléndez, según ellos, fué un mero espectador o pacificador.

El caso fué sometido al jurado luego de hacerse por el fiscal y por la defensa los informes de rigor y después de haber trasmitido la corte las instrucciones necesarias. El jurado era el llamado a apreciar la prueba y a dirimir cualquier conflicto que en la misma pudo surgir. Así lo hizo. A nuestro juicio, la prueba aportada sirve de apoyo para demostrar la corrección del veredicto rendido. Además, múltiples son los casos en que este Tribunal ha dicho que el veredicto de un jurado no será alterado en apelación, a no ser que se nos demuestre que su apreciación de la prueba fué manifiestamente errónea o que el jurado actuó movido por pasión, prejuicio o parcialidad. Tal demostración no se ha hecho en el presente caso.

También alega el acusado Margaro Meléndez al discutir su tercer error que no debió habérsele convicto de asesinato, toda vez que la prueba a lo sumo revelaba que él tiró una piedra a Ortega, mas no que produjo a éste la herida causante de su muerte. Tampoco le asiste la razón.

De acuerdo con el artículo 36 del Código Penal "Todas las personas complicadas en la comisión de un crimen, ya fuere 'felony' o 'misdemeanor', y que directamente cometieren el acto constitutivo del delito, o no hallándose presentes, hubieren aconsejado su comisión o incitado a ella; . . . . son principales o autores en el crimen cometido". La prueba creída por el jurado demostró que ambos acusados acecharon al interfecto y que al pasar éste Meléndez le lanzó una piedra que lo derribó y entonces su coacusado Rivas le asestó una herida mortal. La conexión de Meléndez con el delito quedó claramente establecida. Véanse *Pueblo v. Rodríguez*, 45 D.P.R. 70, 73; *Pueblo v. Méndez*, supra; *Pueblo v. Vélez Posada*, 36 D.P.R. 579; *Pueblo v. Vélez et al.*, 32 D.P.R. 382; *Pueblo v. Marini*, 27 D.P.R. 534; *Pueblo v. Cruz et al.*, 26 D.P.R. 410; *Pueblo v. Bianchi*, 18 D.P.R. 576; y *Pueblo v. Paz*, 12 D.P.R. 99.

■ Aunque ello no ha sido objeto de un señalamiento especial, sostienen los acusados al final de su alegato que la expresión o manifestación ex abrupto y extemporánea del Fiscal en su informe dirigida al Jurado acusando corrupción en el testimonio de Visitación Rodríguez, a pesar de la eliminación que de esta expresión hiciera el juez, quien indicó al jurado que no la tomara como dicha, tuvo necesariamente que influir en el resultado final de este procedimiento. Tampoco creemos que ha habido error a este respecto. La propia defensa admite que la corte inmediatamente instruyó al jurado que no debía tomar en consideración lo manifestado por el fiscal sobre este testigo. Ya hemos resuelto que manifestaciones impropias de esta naturaleza hechas por un fiscal durante el curso del juicio, en presencia del jurado, no dan lugar a un *mistrial* cuando la corte inmediatamente instruye al jurado que no debe tomar en consideración tales manifestaciones. Véase *Pueblo v. Zayas Ortiz*, 65 D.P.R. 538, 540; *Pueblo v. Piazza*, 60 D.P.R. 575.

*Por las razones expuestas procede la confirmación de las sentencias dictadas.*