EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AURELIO FLECHA FONTÁNEZ, acusado y apelante.

Núm. 13993.—*Sometido:* Noviembre 7, 1949. *Resuelto:* Diciembre 14, 1949.

 
 .

*Santos P. Amadeo,* abogado del apelante; *Hon. Procurador General
Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal
Supremo y Fernando Fornaris, Jr., Fiscal Auxiliar,* abogados de
El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DE JESÚS emitió la opinión del
tribunal.

 El apelante fué acusado juntamente con Edelmiro
Sánchez García y Alfonso Sánchez García de un delito de
asesinato en primer grado cometido en la persona de Pru-
dencio Pérez Carrasquillo. Edelmiro Sánchez García se de-
claró culpable y fué sentenciado a reclusión perpetua. Los
dos restantes solicitaron juicio por separado. Celebrado el
de Alfonso Sánchez García fué hallado culpable por un ju-
rado y sentenciado a la misma pena que el anterior. El caso
que ahora nos ocupa es el seguido contra Aurelio Flecha
Fontánez, quien también fué hallado culpable por el jurado
y sentenciado a reclusión perpetua. Al apelar de la senten-
cia impuéstale, se queja de que no tuvo la asistencia de abo-
gado que a todo acusado garantiza el artículo 2 de la Ley
Orgánica. Revelan los autos que al momento de leerse la
acusación contra el apelante, fué representado por el abogado
Rafael S. Vidal; que al iniciarse el juicio estuvo represen-
tado por el abogado Angel Fernández Sánchez y que éste,
antes de empezar el turno de rectificación del fiscal, solicitó
permiso de la corte para retirarse del caso por hallarse en-
fermo, el cual le fué concedido, nombrándose entonces al Lic.
Fernández Garzot para que lo representase durante el in-
forme del fiscal y al Lic. Rafael S. Vidal para que estuviera
presente mientras se trasmitían las instrucciones al jurado
y se dictaba sentencia. Tanto el abogado Fernández Garzot
como el Lic. Vidal se encontraban en el salón de la corte como

meros espectadores y no conocían la prueba desfilada, no hallándose, desde luego, en condiciones de asumir debidamente la representación del acusado. La mera exposición de estos hechos es suficiente para demostrar que el acusado no tuvo la asistencia de abogado real y efectiva garantizada por el artículo 2 de la Carta Orgánica. *Pueblo* v. *Santana,* 55 D.P.R. 239; *Pueblo* v. *Muriel,* 57 D.P.R 914 y *Berríos* v. *Saldaña,* 59 D.P.R. 903.

El Fiscal de este Tribunal conviene con el apelante en que la sentencia debe ser revocada y devuelto el caso para un nuevo juicio, pero como se señalan otros errores en que, como veremos, también incurrió la corte, precisa discutirlos a fin de evitar que se repitan en el nuevo juicio que habrá de celebrarse.

 Se queja el apelante de que el fiscal en su informe exponiendo el caso al jurado, describió lo nervioso que, según él, se hallaba el acusado al ser traído a su presencia para la investigación preliminar. Tales manifestaciones fueron sustancialmente repetidas por el fiscal al declarar como testigo, a saber:

"R. Le dije a Aurelio en mi oficina cuando lo trajeron arrestado a este sitio, dije esto: 'Yo lo he arrestado por el delito de asesinato en primer grado, por darle muerte, por asesinar a Prudencio Pérez Carrasquillo.' El hombre, el individuo Aurelio Flecha Fontánez se puso inmediatamente muy nervioso, meneaba una pierna, la movía de un lado para otro, primero hacía así con el sombrero, que él era inocente, que él era inocente, que él era inocente, que él era inocente, y se halaba el pelo; el estómago, hubo un momento en que se le veía que le subía y le bajaba y la mandíbula como que se le quería salir, y trabajó hasta que por fin con reposo me dice, 'Licenciado, si yo anoche, el primero de enero de 1948, yo salí de mi casa a las 6 de la tarde con dos sillas y dos sudaderos', diciéndome que él es talabartero." (T. de E. págs. 174, 175.)

Las aseveraciones del fiscal fueron impropias, innecesarias y perjudiciales al acusado. La circunstancia de que

más tarde el fiscal indebidamente ocupara la silla testifical,(1) no subsanó su falta al hacer tales manifestaciones. No es extraño que un acusado se ponga nervioso al ser llevado ante un fiscal bajo la imputación de haber cometido un delito de asesinato en primer grado. Esa nerviosidad es compatible con la inocencia.

■ Otro de los errores señalados fué la instrucción que trasmitió la corte en relación con la declaración de los cómplices. La instrucción impugnada dice así:

"No debe haber convicción sólo por el testimonio de un cómplice, a no ser que esté corroborado por otra evidencia que tienda a conectar a los acusados, o al acusado con la comisión del delito. Un cómplice es uno que puede ser acusado por el mismo delito de que se le acusa al acusado o a los acusados que puedan estar envueltos en una acusación. De que alguno de los testigos en este caso sea un cómplice, tal como se define en esta instrucción, es para el Jurado determinarlo por todo el testimonio y las circunstancias que demuestren la evidencia.

"Para hacer de una persona un cómplice, de alguna manera, a sabiendas y con intención criminal ha debido ayudar, impulsado, asistido o participado en el hecho criminal.

"Si ustedes determinan que cualquiera de los testigos en este caso se ha conducido de esta manera con respecto a este delito que se enjuicia, ustedes deben determinar que tal testigo es cómplice en cuanto a este delito." (Instrucciones al Jurado, págs. 7 y 8.)

Cuando la cuestión a resolver es si un testigo hizo o no algo que de haber hecho lo convertiría en cómplice, es al jurado a quien incumbe determinar si el testigo es cómplice. Pero si los hechos determinantes de la complicidad no están en disputa, entonces la determinación de si el testigo es o no cómplice es una cuestión de derecho y como tal corresponde

(1) El doble papel de fiscal y testigo debe evitarse. El jurado, naturalmente, concede más peso a la declaración de un fiscal que a la de un testigo corriente. El convertirse el fiscal en testigo de cargo, tiende a privar al acusado del juicio justo e imparcial a que tiene derecho. Por esa razón, el fiscal sólo debe ser testigo para evitar un fracaso de la justicia, en circunstancias extraordinarias que no concurren en el presente caso. *Robinson* v. *United States,* 32 F.2d 505 (C.A. 8vo. 1928) y Cf. Monografía (1944) 149 A.L.R. 1305.

resolverla a la corte y no al jurado. En el presente caso no existe controversia en cuanto a que Edelmiro y Alfonso Sánchez García habían sido convictos del mismo delito que se imputó al acusado. Ese hecho incontrovertido, como cuestión de derecho los convirtió en cómplices. *Pueblo* v. *Díaz,* 67 D.P.R 785. Por consiguiente ésa era cuestión que no incumbía al jurado y el sometérsela constituyó error. *People* v. *Coffey,* 119 Pac. 901 (Cal., 1911). Es verdad que en el presente caso existió la declaración del testigo Pablo García Dones que sin ser cómplice, conectó al acusado con la comisión del delito;(²) pero esto no subsana el error en que incurrió la corte, puesto que es imposible determinar si al declarar al acusado culpable, el jurado tomó como prueba de corroboración la declaración de alguno de los cómplices o la de Pablo García Dones que no lo era. Pudo no haber creído la declaración de este último y sin embargo declarar culpable al acusado basándose en las declaraciones de los cómplices Edelmiro y Alfonso Sánchez García.

■ También erró la corte al instruir al jurado lo siguiente:

"...habiéndose demostrado por testimonios presentados por el Fiscal, que días después de la comisión del delito, al ser arrestado dicho acusado, en distintos momentos hizo manifestaciones contradictorias en cuanto a su paradero al tiempo que se cometió el delito o alrededor de ese tiempo, esas manifestaciones contradictorias de sí montan a la corroboración natural de los cómplices." (Instrucciones al Jurado, pág. 9.)

Las manifestaciones contradictorias a que se refirió la corte, en manera alguna conectaron al acusado con la comisión del delito. Claro es que si hubiera habido prueba sufi-

---

(²)Este testigo declaró que vivía en una casa cercana al sitio del crimen; que oyó ruido en la casa de la víctima y la voz de ésta que llamaba al testigo pidiéndole auxilio; que el testigo se asomó a la ventana de su casa; que luego de consumarse el crimen, el acusado Aurelio Flecha Fontánez fué donde el testigo y le dijo que si él decía algo también corría peligro; que después fué a la casa de Prudencio Pérez Carrasquillo y lo encontró muerto en su cama y en la habitación vió el machete con que se realizó el delito.

ciente, independientemente de la de los cómplices, para conectar al acusado con la comisión del delito, esas manifestaciones contradictorias del acusado hubieran podido tomarse en consideración por el jurado a los efectos de determinar su culpabilidad.

Por último, se queja el apelante de que el veredicto es contrario a la prueba. Como se ha de celebrar un nuevo juicio, debemos abstenernos de comentar la prueba presentada y dejar que el jurado, o el juez en su caso, la aprecie libremente, sin indicación alguna por parte de este Tribunal.

*Procede, por lo expuesto, revocar la sentencia y devolver el caso a la corte inferior para la celebración de un nuevo juicio.*

El Juez Asociado Señor Snyder está de acuerdo con el resultado y con los términos de la opinión, excepto en aquella parte de la misma que se refiere al testimonio del fiscal.