CALLIE DIXON V. STATE.

No. 26,583. November 11, 1953.
Appellant's Motion for Rehearing Denied
(Without Written Opinion) December 16, 1953.

*Scarborough, Yates, Scarborough & Black,* by *Larry Scarborough,* Abilene, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was convicted in the county court of Taylor County of the offense of the unlawful possession of whisky, gin, malt liquor and beer for the purpose of sale in a dry area; the complaint and information alleging that appellant had previously been finally convicted of two misdemeanors of like character. Upon the trial a verdict of guilty was rendered by the jury and her punishment was assessed at a fine of $400.00 and confinement in the county jail for six months.

The testimony shows that appellant, who was a Negro woman, resided at 535 South Third Street in the city of Abilene; that on December 4, 1952, certain peace officers, after having secured a search warrant, went to the home of the appellant for the purpose of searching it for intoxicating liquors. She was at her home upon the arrival of the officers. There was also present a white man who was drinking a can of beer at the time. Upon the search of the appellant's premises the officers found 8 cases of malt liquor containing 26 8-ounce cans each; 2 cases of Schlitz beer containing 24 12-ounce cans each; 10 half pints of Gilbey's gin; one extra 12-ounce can of Schlitz beer; one other can of malt liquor containing 8 ounces; 4½ pints of Rocking Chair Whisky; 2½ pints of H. & H. Whisky, and 2 one-half pints of Guckenheimer Whisky. A portion of the beer and whisky was found in the house and a part of the beer, malt liquor and whisky was found underneath the front porch of the appellant's house.

We think that the state amply proved that Taylor County was a dry area.

Testifying in her own behalf, appellant stated that she had some ten cans of beer in a refrigerator for her own personal use; that she had it for medicinal purposes; and that the other amount of whisky, malt liquor, gin and beer did not belong to her; that she did not know why it was there.

Appellant filed a motion to quash the portion of the complaint and information relative to the two prior convictions alleged therein. She denied that she had pleaded guilty or in any way appeared before the court, and that if any plea of guilty was entered for her, it was done without her knowledge and consent.

It was sufficiently shown that the appellant was present at the two previous trials, either in person or by her attorney; that from time to time she finally paid the amount of fine assessed against her, together with the costs in the two previous cases. We think the court was correct in overruling the motion to quash.

Appellant also attempted to quash the search warrant on the ground that it was claimed that the justice of the peace signed this warrant in blank and that the contents thereof were afterwards filled in by some other person; that the two affiants who made the affidavit relative to the warrant did not personally appear before the justice of the peace to swear to the same. Appellant did not support this matter by proof of that fact and the state's proof showed otherwise.

Appellant's formal Bill of Exception No. 2 arose in the following manner: Appellant swore that there were two outside doors to this house in which she lived, same being the one set forth in the search warrant, which house consisted of an east room and a west room with a single kitchen; that at times she rented the west room whenever she could do so; that on the occasion of the search there was no one in that room which had been used as a bed room. Appellant requested an instruction which would have instructed the jury that this was a duplex house; that she occupied only the east half thereof; that the major portion of the intoxicating liquor was found in the west half of the house; that before the jury could find her guilty of the possession of any liquor found in the west half of the house,

they would have to believe, beyond a reasonable doubt, that she was in the care, custody and control of such whisky in the west half of the house, and that unless they so believed, to find the appellant not guilty.

This requested charge was not called for by the facts presented herein and was an improper one. It was not only shown that the east portion of the house contained the refrigerator in which the 10 cans of beer were found but some of the other liquor and a large amount of this liquor was found under this house. Therefore, such a charge would have left undisposed of a large amount of liquor found under the house.

The testimony does not show this house to have been a duplex, but instead it shows that there were two front doors and two rooms inside of the house separated only by curtains for doors which would open from one side to the other, and there being no actual doors between the east room and the west room; that it was more than thirty days since anyone had rented the west portion of the house. The testimony also shows that the appellant was in control of the entire house and only rented rooms in the west part thereof whenever she was able to do so.

Bill of Exception No. 3 complains because the witness, Leon Bowman, an agent of the Texas Liquor Control Board, read the labels before the jury on the bottles of beer, whisky and gin that were claimed to have been found in this house and about it, on the ground that such was hearsay. We think the cases of Adair v. State, 157 Tex. Cr. Rep. 27, 246 S.W. (2d) 211, Ferguson v. State, 133 Tex. Cr. R. 250, 110 S.W. (2d) 61; and Dabney v. State, 141 Tex. Cr. R. 16, 146 S.W. (2d) 1000, justify the court's action relative thereto.

In her argument, appellant stresses the fact that no can was opened and no liquor was tasted or smelled in order to show that the same was intoxicating liquor. This court has long held that whisky is an intoxicating liquor, as well as beer. The record is replete with statements as to "this whisky" and "this beer" and in fact this matter is referred to by the appellant's attorney when he said, "There are millions of cases of beer exactly like this. There is no showing where this beer came from and where it has been since December 4th, 1952, and for the further reason that the identification as to this particular place is not sufficient." The witnesses called it beer, whisky and gin many times, and witnesses also identified it as being beer, gin, malt liquor and

whisky. It was called that, it was labeled that, and it was so referred to throughout the case. For instance, one witness testified, "Well, there was approximately ten half-pints of gin; approximately five cases of malt liquor; two cases of Schlitz beer, canned beer; and ten cans of Schlitz beer in the refrigerator." Again, after examining this amount of liquor in court, the witness testifed that he put marks on some of it, and said, "Not on the whiskey and gin. We did on the carton. We did not mark each bottle individually, but we did mark the case that contained the beverages." The witness further stated that he found the beer in the refrigerator, approximately ten cans of it, and "we found approximately three or four half pints of whisky in the east side of the house."

The witnesses all testified relative to the large amount of whisky, beer, gin and malt liquor found in the house and this court well knows that whisky, beer and gin are all intoxicants. See Weeks v. State, 140 Tex. Crim. Rep. 246, 143 S.W. (2d) 956; Bell v. State, 144 Tex. Cr. Rep. 21, 146 S. W. (2d) 1004; Skinner v. State, 141 Tex. Cr. Rep. 59, 159 S.W. (2d) 878; Parrack v. State, 154 Tex. Cr. Rep. 532, 228 S.W. (2d) 859, and cases therein cited. We think it is established satisfactorily by circumstantial evidence, at least, that the contents of the bottles and cans found in the appellant's house were intoxicating liquors and contained alcohol in excess of one-half of one per cent by volume.

Appellant makes the further complaint in her Bill of Exception No. 4 that after the jury had retired to deliberate they returned into court and reported to the judge that they were unable to agree; that they stood five to one, not stating how the majority stood. Upon receiving such statement the judge asked them to return for further deliberations and to inform him if they still could not agree; that afterwards they returned a verdict of guilty as set forth above.

Appellant also complains relative to the verdict of the jury which she claims is uncertain and one is unable to tell therefrom what are the terms of such verdict. The verdict returned found the appellant guilty as charged in the information and assessed her punishment at "$400.00, 6 month in *jale*." We think this verdict is plain and can be construed to mean that appellant was fined the sum of $400.00 and punished at six months' confinement in jail.

"Verdicts should receive a liberal rather than a strict con-

struction, and if the finding of the jury can be reasonably ascertained the verdict should be held good as to form. The object should be to ascertain the intention of the jury." See many cases cited in Branch's Ann. Tex. P.C., p. 331, sec. 646. "Bad spelling or bad grammar will not vitiate a verdict if the intention of the jury can reasonably be ascertained." We see no reason for disturbing the verdict in the present instance on account of its bad grammar or misspelling.

We think this case has been properly tried, and no ground has been shown where the same should be disturbed.

The judgment is therefore affirmed.