EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS RIVERA PADÍN, acusado y apelante.

Número 15703.

*Sometido:* 9 de noviembre de 1954. *Resuelto:* 22 de diciembre de 1954.

*Esteban Susoni Lens* y *Santos P. Amadeo,* abogados del apelante;
*Hon. Secretario de Justicia José Trías Monge* y *Jaime García
Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El
Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión
del Tribunal.

Luis Rivera Padín y Flor Mercado Serrano fueron acu-
sados conjuntamente del delito de robo.   El día del juicio com-
pareció Rivera Padín representado por el abogado Herminio
Miranda y el co-acusado por el abogado César Vélez.   El
juicio, celebrado ante un jurado, siguió los trámites ordina-
rios.   Rivera Padín fué declarado culpable del delito que se
le imputaba y condenado a la pena de un año ocho meses a

diez años de presidio. Contra dicha sentencia interpuso el presente recurso de apelación, señalando la comisión de los siguientes errores:

"1—La corte sentenciadora erró al obligar al jurado a deliberar contra su consentimiento, ya que éste le había informado que no podrían llegar a un acuerdo en cuanto a uno de los acusados.

"2—El acusado-apelante no tuvo un juicio imparcial porque el jurado divulgó el estado del balotaje del mismo en cuanto a la culpabilidad o inocencia del acusado-apelante.

"3—El tribunal erró al permitir que el acusado-apelante no tuviera asistencia de abogado durante todos los pasos del procedimiento."

■ Los dos primeros errores están basados en el mismo incidente. Después que el jurado había estado deliberando durante una hora siete minutos regresó a sala y entonces se desarrolló el siguiente diálogo entre el juez y el jurado:

"Hon. Juez:—La corte reanuda la sesión. ¿Las partes aceptan que el jurado es el mismo y está completo?

· "Hon. Fiscal:—Sí, señor Juez.

"Lcdo. Vélez González:—Sí, señor Juez.

"Hon. Juez:—¿Han llegado a un acuerdo los caballeros del jurado?

"Presidente del Jurado:—En parte, señor Juez, hemos llegado a un acuerdo por unanimidad y en el otro siete a cinco.

"Hon. Juez:—Pero sin decir la situación a que se refiere la unanimidad y a que se refiere la discrepancia, ¿creen la dama y los caballeros del jurado que necesitarían alguna instrucción adicional, en qué respecto, para ver la viabilidad de que lleguen a un acuerdo?

"Presidente del Jurado:—Yo sondeé la opinión de los demás, la dama y caballeros que componen el jurado, y en manera alguna hemos podido llegar a un acuerdo, ni llegaríamos, al extremo que muchos de los jurados dijimos que nos cogería la otra Navidad deliberando y siempre el resultado sería análogo.

"Hon Juez:—Yo creo que esa actitud podría limarse, porque los pensamientos, la mente y la conciencia de los que estamos en estas posiciones para juzgar deberían estar siempre abiertas a discusión y en plano de convencer o convencerse; quiere decir que nos parece que el extremo de que llegarían a tal o cual día

sin deliberar es un acto que pudiera limarse como ya os dije al principio. Yo creo que este no es un caso difícil; es un caso sencillo en que han mediado por una y otra parte precisamente tres testigos.

"Presidente del Jurado:—Nos encontramos con un criterio completamente cerrado.

"Hon. Juez:—La Corte entiende que dándoles unos minutos más, media hora o una hora más para que ustedes discutan este caso podrían llegar a un acuerdo y va a suplicar a la dama y caballeros del jurado que se retiren al cuarto de deliberaciones y entablen nueva discusión. Traten de llegar al acuerdo a que en justicia deben llegar, . . ." (T.E. págs. 96 a 98.)

"                                                          .

"Así que ninguna inferencia pudiera venir para tratar de impresionar vuestras conciencias de nada en absoluto que no sea la impresión pura, justa, hidalga y decente que puedan dar las declaraciones de los testigos que han sido examinados aquí bajo juramento. Por eso yo he creído siempre que el jurado de este distrito ha estado inspirado en los grandes propósitos que inspiró el juez Mestre.

"Yo entiendo que la dama y caballeros del jurado deben retirarse a deliberar y tratar de seguir discutiendo, porque ya que han llegado a un acuerdo en cuanto a este caso en parte, queda la otra parte en que está en disparidad y puede que unos a los otros se convenzan o que dentro de la misma discusión no esté definitivo nada; dentro de la misma discusión se puede discutir el acuerdo unánime que tienen. La corte ordena a los caballeros jurados que vayan al cuarto de deliberaciones." (1)   (T. E. págs. 99 a 100.)

Arguye el apelante que no hay duda alguna que el veredicto condenatorio fué el resultado de la orden de la corte ordenándole que volvieran a deliberar a pesar de que el jurado no podía ponerse de acuerdo según manifestaciones de su Presidente. *People* v. *Sheldon*, 50 N.E. 840 (1898); *Meadows* v. *State*, 62 So. 737; *State* v. *Shuman*, 90 S.E. 596; *People* v. *Neilson*, 22 Hun 1 (N.Y.); *Cranston* v. *N. Y. C. R. R. Co.*, 9 N.E. 500; *People* v. *Moore*, 25 N.Y.S.2d 206; *People* v.

---

(1) Las palabras del juez sentenciador que aquí hemos omitido se referían a ciertas instrucciones dadas en una ocasión anterior por el Juez Mestre sobre el juramento preliminar que presta el Jurado respecto a su capacidad para servir como tal.

*Koerner*, 84 N.E. 1117; *People* v. *Walker*, 209 P.2d 834; *People* v. *Kindelherger*, 34 P. 852; *People* v. *Crowley*, 224 P.2d 748; *People* v. *Finkelstein*, 220 P.2d 934."

No tiene razón. El incidente antes transcrito no indica que el jurado fuera coaccionado o intimidado por el juez sentenciador para que rindiera un veredicto de culpabilidad. Las manifestaciones hechas por dicho magistrado al jurado no son de tal naturaleza que hayan podido ejercer en éste una influencia impropia, ni constituyen dichas manifestaciones una intimidación al jurado para que rindiera un veredicto de culpabilidad.

Procede anular un veredicto, entre otros casos, cuando el mismo es el resultado de coacción o intimidación al jurado, o cuando las manifestaciones o comentarios del juez indican o dan a entender al jurado cuál es el veredicto específico que ellos deben rendir o cuando tales manifestaciones o comentarios ejercen influencia impropia en el jurado. Esta es la doctrina que en términos generales sostienen los casos citados por el apelante. Sin embargo, dichos casos, con excepción del de *Pueblo* v. *Crowley*, (²) supra, son claramente distinguibles. En algunos de estos casos el jurado rindió un veredicto condenatorio bajo coacción o amenaza del juez; en otros, las manifestaciones del juez indicaban claramente al jurado cuál era el veredicto que debían rendir, y aun en otros, las manifestaciones del juez ejercieron influencia impropia en el jurado. Ninguna de estas circunstancias está presente en el

---

(²) En el caso de *Crowley*, igual que en el de epígrafe, el juez sentenciador se expresó en el sentido de que la evidencia producida era *sencilla y clara . . . clara aunque contradictoria*. El razonamiento de la Corte de Apelaciones de California es el siguiente: "Estas manifestaciones querían decir que era la opinión de la corte que aunque había evidencia en conflicto, una de las dos: la del Pueblo o la del acusado debía ser descartada ya que siendo *clara*, no había base en la evidencia para que hubiera una diferencia razonable de opinión en cuanto a la culpabilidad del acusado. Jurados razonablemente inteligentes saben que la corte no permitiría la condena de un acusado a base de evidencia legalmente insuficiente. Como el Jurado no fué instruído para que absolviera al acusado, podía inferir que la corte esperaba del Jurado que condenara. Este razonamiento en cuanto a la manera de razonar el jurado fué corroborado por el veredicto

caso de autos por lo que el veredicto que ahora ataca el apelante, está libre de tales vicios de nulidad.

Ahora bien, el juicio en este caso duró casi todo un día y el jurado estuvo deliberando solamente por espacio de una hora y siete minutos cuando el juez le ordenó que continuara su deliberación. En el ejercicio de su discreción al dirigir los procedimientos, el juez tiene facultad para instar al jurado cuando median circunstancias como las que revela el récord de este caso, que continúe sus deliberaciones siempre que desde luego, lo haga en forma tal que el jurado no se sienta coaccionado. *Pueblo* v. *Berdecía*, 59 D.P.R. 318 y *Pueblo* v. *Saldaña*, 66 D.P.R. 189. Cada caso debe resolverse a base de sus peculiares circunstancias.

Una mayoría de las decisiones en otras jurisdicciones sostiene que no se comete error perjudicial cuando el juez informa al jurado que la prueba es clara y que no debe haber dificultad en llegar a un veredicto. Véase *Boehm* v. *United States*, 123 F.2d 791. *Certiorari and rehearing denied; United States* v. *Olweiss*, 138 F.2d 798 *certiorari denied; United States* v. *Sorcey*, 151 F.2d 899, *certiorari denied; People* v. *Finkelstein*, supra; *People* v. *Green*, 224 P.2d 406; *Dixon* v. *State*, 262 S.W.2d 488; *Graham* v. *State*, 154 S.W.2d 584. Sin embargo, es necesario aclarar que el juez debe abstenerse de decir o hacer algo durante el juicio que indique al jurado su opinión en cuanto a la culpabilidad o inocencia del acusado. Véase *Whiting* v. *State*, 218 P.2d 402.

---

condenatorio." Igualmente podría argumentarse que un jurado razonablemente inteligente sabe que cuando el estado prueba su caso prima facie, aunque la prueba sea débil y digna de muy poco crédito, el juez no puede ordenar la absolución del acusado porque es función del Jurado y no suya, según siempre se les instruye, la de aquilatar la prueba y resolver sobre su credibilidad. *Pueblo* v. *Rosado*, 72 D.P.R. 827; *Pueblo* v. *Rivas*, 68 D.P.R. 474. De todos modos el caso de *Crowley* fué resuelto por la Corte de Apelaciones de California y posteriormente ha sido citado únicamente por la misma corte en dos ocasiones: una, para seguirlo en *Pueblo* v. *Walker*, 246 P.2d 1009 y otra, para distinguirlo en *Pueblo* v. *Lammers*, 238 P.2d 667. Como se ve y hasta donde llega nuestro estudio, ni el Tribunal Supremo de California, ni los tribunales de otras jurisdicciones americanas han adoptado la doctrina del caso de *Crowley*.

█ El primer error no fué cometido. Tampoco el segundo. No es cierto, como alega el apelante, que el jurado divulgara el estado del balotaje en cuanto a su culpabilidad o inocencia.(³) El proceso se seguía contra dos acusados. Lo que el jurado informó espontáneamente al juez fué que en cuanto a uno de dichos acusados habían llegado a un acuerdo por unanimidad y que en cuanto al otro estaban siete a cinco. El hecho de que el jurado informe al juez que han llegado a un acuerdo en cuanto al veredicto, no constituye error alguno. Tampoco es error perjudicial que el jurado, como ocurrió en este caso, exprese el estado del balotaje sin indicar a favor de qué lado se inclina la mayoría.(⁴)

█ Pasemos ahora al tercer error señalado. Una vez terminado el turno de rectificación que consumió el fiscal, el Lcdo. Miranda, abogado del acusado-apelante, solicitó permiso del juez en corte abierta para retirarse del tribunal, manifestando que había hablado con el Lcdo. Vélez, para que éste continuara representando a Rivera Padín. A preguntas del Juez, Rivera Padín contestó en dos ocasiones que estaba conforme en que el Lcdo. Vélez le representara durante las instrucciones y continuación del juicio. La corte así lo ordenó. Acto seguido dió sus instrucciones al jurado(⁵) y éste se retiró a deliberar. Cuando el jurado regresó a sala para informar al juez que habían llegado a un acuerdo por unanimidad en cuanto a uno de los acusados y que en cuanto al otro estaban siete a cinco, ocurrió lo siguiente:

---

(³) En el alegato del apelante se afirma, sin base alguna en el récord para ello, que "el jurado le informó al juez que habían condenado a uno de los acusados, pero que en cuanto al otro no podrían ponerse de acuerdo."

(⁴) En California, según la jurisprudencia citada por el apelado, no es error el que el jurado espontáneamente, además de informar el estado de la votación diga de qué lado se inclina la mayoría. *People* v. *Talkington*, 47 P.2d 368. Si igual doctrina debe o no prevalecer en esta jurisdicción. *quaere*.

(⁵) De la transcripción de la evidencia aparece que cuando el juez iba a comenzar a trasmitir las instrucciones al jurado, el Lcdo. Vélez manifestó lo siguiente:

"Lcdo. Vélez González:—Sr. Juez, el compañero Miranda ha tenido que salir; y yo voy a estar representando a ambos acusados en las instrucciones que su Señoría habrá de dictar."

"Sra. Jurado Matilde Negrón de Jesús:—Yo le hacía una sugerencia que si nosotros podíamos ir a la parte donde uno de los testigos dijo de la altura y contemplar la altura de arriba abajo para cerciorarnos si está en lo cierto.

"Hon. Juez:—Ya en este estado una inspección ocular yo no la determinaría si no hay un asentimiento o una estipulación de las partes. Yo creo que con una estipulación de las partes no podrían quejarse ninguna de ellas, ni El Pueblo de Puerto Rico ni la defensa.

"Lcdo. Vélez González:—En cuanto a la parte que yo he representado no tendría inconveniente, pero en vista que yo durante las instrucciones estuve representando al compañero Miranda, no estoy en condiciones de poder dar un acuerdo en un lado o en otro.

"Hon. Juez:—Bueno, esto hubiera sido saludable. Ahora, yo en verdad de haberlo solicitado alguna de las partes lo hubiera concedido. Ahora, yo entiendo que no es necesaria una inspección ocular porque hubo una serie de testigos que explicaron los hechos con lujo de detalles y hay base para que ustedes calibren si los testigos dijeron la verdad, qué testigo dijo la verdad y qué testigo no dijo la verdad; esto es, el gesto, la forma de declarar de los testigos, por sus condiciones, si ustedes le hubieran adjudicado de moralidad, de altura de miras. La corte dispone, si ustedes quieren ir a comer daría un receso para que ustedes fueran a comer y seguir deliberando después." (T.E. págs. 100 a 101.)

Arguye el apelante que en el momento crítico en que el jurado informaba al juez que no podían llegar a un acuerdo en cuanto a uno de los acusados, así como cuando uno de sus miembros solicitó una inspección ocular, dicho apelante no estuvo asistido de abogado. A este efecto se expresa así en su alegato:

"Lo cierto es que aunque el Lcdo. César Vélez González se le hubiera nombrado para representar al acusado-apelante en todos los pasos del procedimiento, éste no tuvo representación de abogado en los momentos en que el jurado a través de su presidente le decía al juez que no podrían llegar a un acuerdo en cuanto al otro acusado y el juez insistía en que continuaran deliberando. Tampoco tuvo el acusado-apelante representación

legal en el momento en que uno de los jurados solicitó una inspección ocular y el juez sentenciador estaba dispuesto a concederla si las partes se hubieran puesto de acuerdo. La corte erró y privó al acusado-apelante del derecho constitucional a asistencia de abogado en todos los pasos del procedimiento cuando no le llamó la atención al Lcdo. César Vélez González para que hablara en representación del acusado-apelante cuando se solicitó la inspección ocular por el jurado. El juez sentenciador debió haber protegido el derecho constitucional del acusado-apelante en este [estado] crítico del proceso ya que éste tenía derecho a asistencia de abogado en todos los pasos del procedimiento. Véanse *Powell* v. *Alabama,* 287 U.S. 45, (1932) ; *Ex parte Hernández Laureano,* 54 D.P.R. 416, (1939) y *Pueblo* v. *Flecha Fontánez,* 70 D.P.R. 685, (1950).

"Es inmaterial el hecho de que no se supiera cuál era el acusado que había sido ya convicto por el jurado según se lo manifestó al juez sentenciador. Esto es así debido a la naturaleza fundamental y absoluta que tiene un acusado a tener asistencia de abogado en todos los pasos del procedimiento. Sobre este aspecto de la cuestión dijo el Tribunal Supremo de los Estados Unidos en el caso de *Glasser* v. *United States,* 315 U. S. 60, (1941) : 'The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial'."

No tiene razón. A partir del momento en que el juez comenzó a trasmitir las instrucciones al jurado, el apelante estuvo asistido del Lic. Vélez, con su consentimiento expreso, dado en corte abierta. A juzgar por lo que luego ocurrió, dicho letrado había de representar al acusado-apelante en las etapas subsiguientes del juicio y hasta que el jurado rindiera veredicto. Cuando éste fué rendido y aceptado por la corte, el Lic. Vélez solicitó del tribunal, aunque según sus manifestaciones seguía instrucciones del Lic. Miranda, que se le permitiera al acusado-apelante continuar en libertad bajo la misma fianza que había prestado hasta que la corte dictara sentencia en su contra. Esto refuerza la conclusión de que la representación del apelante por el Lic. Vélez no se limitó al

período de las instrucciones. De lo contrario, el Lic. Vélez no hubiera representado al acusado, según lo hizo, en el momento de la recepción por la corte del veredicto del jurado.

El apelante insiste en que estuvo huérfano de representación legal en el momento crítico en que uno de los miembros del jurado solicitó la inspección ocular. No convenimos con el apelante en que ese fuera un momento crítico del juicio y menos aún en que por el hecho de que el Lic. Vélez se abstuviera de dar o negar la conformidad del apelante, para que se celebrara la inspección ocular, se viola la cláusula constitucional del debido proceso de ley.

█ La solicitud de inspección ocular, aun en esa etapa del proceso, iba dirigida a la discreción del juez. Correspondía a éste resolver, y no al jurado ni a las partes, si debía o no celebrarse dicha inspección. *Pueblo* v. *Goitía*, 41 D.P.R. 941; *Pueblo* v. *Beltrán*, 73 D.P.R. 509 y casos en éste citados; *Pueblo* v. *Cruz*, 60 D.P.R. 116. Finalmente, el juez, en el ejercicio de su discreción, denegó la solicitud de inspección ocular a base de que la misma era innecesaria. Al tomar tal decisión, el juez no venía obligado a oír previamente a ninguna de las partes. Por lo tanto, no se estaba privando al acusado de ningún derecho. Se arguye, sin embargo, que primeramente el juez, dejó en libertad al fiscal y a la defensa, para que de común acuerdo, decidieran si debía celebrarse la inspección, y que en la decisión de esta importante cuestión, el apelante no tuvo asistencia legal. No hay base en el récord para concluir que de haber el apelante dado su conformidad, la inspección ocular se hubiera celebrado. El fiscal no se manifestó en un sentido ni en otro. De todos modos la inspección no se celebró. De haber sido ésta beneficiosa para el apelante, es lógico suponer, que su abogado, el Lic. Miranda, la hubiera solicitado oportunamente. Esta suposición encuentra amplio apoyo en el hecho de que todo el récord del caso revela que el Lic. Miranda, defendió y protegió los derechos del apelante durante el juicio con habilidad y competencia.

Convenimos con el apelante en que el acusado tiene derecho a asistencia de abogado durante todo el juicio. *Ex parte Hernández Laureano*, 54 D.P.R. 416; *Pueblo* v. *Muriel*, 57 D.P.R. 914. En este último caso se siguió la doctrina sentada en *Powell* v. *Alabama*, 207 U. S. 45, ([6]) en el sentido de que la asistencia de abogado no debe ser una mera formalidad legal. No podemos convenir, sin embargo, en que el apelante no tuvo una efectiva asistencia legal en este caso. Él dió su consentimiento expreso para que el Lic. Vélez, quien había representado durante todo el juicio al otro coacusado, continuara representándolo a él también. Por otro lado, el incidente sobre solicitud de inspección ocular no es de tal naturaleza que infrinja la cláusula del debido procedimiento de ley. Nos sentimos remisos a extender hasta ese extremo la garantía constitucional. *Cf. Canizio* v. *New York*, 327 U. S. 82, *rehearing denied*, 327 U. S. 816; *Gallegos* v. *Nebraska*, 342 U. S. 55; *Martin* v. *United States*, 182 F.2d 225; *In re Egan*, 149 P.2d 693.

*No habiéndose cometido ninguno de los errores señalados, la sentencia apelada será confirmada.*

([6]) La doctrina del caso de *Powell* fué ratificada recientemente por la Corte Suprema de los Estados Unidos en *Chandler* v. *Fretag*, 348 U. S. 3.