EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* VÍCTOR MARTÍNEZ RAMOS, demandado y apelante.

Número 15665.

*Sometido:* 3 de diciembre de 1954. *Resuelto:* 29 de junio de 1956.

*Guillermo Bauzá*, abogado del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo*, abogados de El Pueblo, apelado.

## SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 1956.

Visto el caso de *Pueblo* v. *Rivera*, 77 D.P.R. 664, se confirma la sentencia apelada dictada por el Tribunal Superior

de Puerto Rico, Sala de San Juan, con fecha 27 de junio de 1952, en el caso de epígrafe.

Así lo pronunció y manda el Tribunal y firma el señor Juez Presidente. Los Jueces Asociados señores Negrón Fernández y Belaval disintieron.

A. C. SNYDER,
*Juez Presidente.*

Certifico:
IGNACIO RIVERA,
*Secretario.*

Opinión disidente del Juez Asociado Sr. Belaval con la cual está conforme el Juez Asociado Sr. Negrón Fernández.

Contra el señor Víctor Martínez Ramos se presentó una acusación por un delito de escalamiento en primer grado. Sometida la causa al jurado, el jurado deliberó por algún tiempo y después solicitó volver a Sala para que se le leyera por el taquígrafo del tribunal "las declaraciones de la señora de edad y la del perjudicado" (t. 47), ambas correspondientes a la prueba de la acusación. Por no encontrarse en Sala el taquígrafo que había tomado los testimonios, el señor Juez volvió a repetir ante el jurado, el resumen habitual de los testimonios que había incluído en sus instrucciones al jurado, manifestándoles además, que si interesaban escuchar dichos testimonios en su totalidad, él tendría disponible el taquígrafo al día siguiente. Aparentemente, el jurado quedó satisfecho con el resumen de dichos testimonios, que por segunda vez, les hizo el juez que presidía la Sala, pues se retiraron a deliberar.

El jurado solicitó comparecer nuevamente ante el juez y al ser preguntados si se habían puesto de acuerdo sobre algún veredicto, el Presidente contestó: "No, señor Juez, y creo que no podríamos llegar a veredicto alguno aunque estuviéramos toda la noche". Ante esta afirmación, el juez que presidía la vista hizo las siguientes declaraciones:

"Entonces Márshal, el Márshal llevará el jurado a comer al hotel y les habilitará camas en el hotel para que descansen. *La corte cree que este es un caso claro y que es posible llegar a un veredicto*. El juez tiene la impresión de que con el descanso de la noche en el día de mañana pueden llegar a resolver este caso. El Márshal llevará al jurado al hotel para dormir esta noche. A los señores del jurado se les advierte que no podrán separarse y que deberán estar y permanecer juntos, no deberán hacer comentarios entre sí ni con persona alguna ni permitirán que persona alguna se les acerque a hablarles del caso ni nada relacionado con el mismo hasta mañana a las nueve en que continuarán deliberando. Receso.

"Sr. Soto: ¿Señor Juez, si llegáramos a un acuerdo?

"La Corte: Falta media hora para las seis. ¿Los señores del jurado no creen que si hacen un esfuerzo, una nueva tentativa de deliberación lleguen a un acuerdo? ¿Podrían todavía antes de las seis de la tarde llegar a un veredicto?

"Sr. Pío Mejías: Yo creo que no podría haberlo señor Juez.

"La Corte: La corte cree que tomando algún tiempo más haya la posibilidad de llegar a un veredicto, cualquiera que sea, de manera que la corte cree y entiende que deben proceder a deliberar media hora más para ver si es posible llegar a un veredicto. Vuelvan arriba."

Cuando aún no había transcurrido el tiempo fijado por el tribunal para la nueva deliberación, el jurado volvió a Sala trayendo un veredicto de culpabilidad contra el acusado. En ese momento ocurre el siguiente incidente:

"La Corte: ¿Los señores del jurado han llegado a un veredicto?

"Sr. Presidente Soto: Sí señor.

"La Corte: Tenga la bondad de pasarlo.

"Sr. Soto: Sí señor.

"La Corte: Tenga la bondad de ponerse de pie el acusado. Déle lectura el Secretario.

"Sr. Secretario: Causa Criminal F-3425, El Pueblo de Puerto Rico *v.* Víctor Martínez Ramos, por escalamiento en Primer grado. Nosotros los señores del jurado declaramos al acusado Víctor Martínez Ramos, culpable del delito de escalamiento en primer grado. San Juan, Puerto Rico, a 17 de junio de 1952, Antonio Soto, Presidente del Jurado.

"La Corte: ¿El señor Presidente puede informar...?

"Sr. Soto: Por mayoría.

"La Corte: ¿De qué?

"Sr. Soto: De diez a dos.

"La Corte: ¿A todos y cada uno de los señores del jurado, este es su veredicto por mayoría de diez a dos?

"Sres. Jurados: Todos contestan en la afirmativa.

"La Corte: ¿Diez en contra y dos a favor?

"Sres. Jurados: Sí señor.

"La Corte: La corte en vista de que todos los caballeros jurados contestan que ese es su veredicto, declara convicto y culpable al acusado Víctor Martínez Ramos del delito de escalamiento en primer grado.

"Sr. Presidente Soto: Se solicita clemencia para el acusado.

"La Corte: La corte tomará en consideración la petición de los caballeros del jurado.

"Sr. Jurado Fermín Viera: Yo quisiera que S. S., me excusara como jurado.

"La Corte: Mañana plantea esa cuestión.

"Sr. Viera: No me siento con deseos de prestar mis servicios...

"La Corte: La corte ahora los excusa hasta mañana a las nueve. Mañana cuando regrese si hay alguna razón para que la corte lo excuse...

"Sr. Viera: Me siento incómodo, señor Juez.

"La Corte: La corte señala el día 20 del corriente para el acto del pronunciamiento de sentencia. La corte dispone que el Márshal se haga cargo del acusado. Receso hasta mañana a las nueve."

Antes de dictarse sentencia, el acusado presentó una moción de nuevo juicio, alegando, que por el modo como se había conducido el jurado, era evidente que la causa no se había resuelto "de una manera correcta y concienzuda", (inciso 3 del art. 303 del Código de Enjuiciamiento Criminal de Puerto Rico). Acompañó a dicha moción la siguiente declaración jurada del señor Fermín Pereira, quien había actuado como jurado en el caso:

"Yo, Fermín Pereira, mayor de edad, casado y vecino de la calle Vallejo núm. 1114 de Río Piedras, Puerto Rico, bajo juramento declaro y digo—Primero:—Que mi nombre es como

queda .dicho y soy de las circunstancias personales arriba expresadas. Segundo:—Que pertenecí al Panel de jurado que entendió en la causa que sigue El Pueblo de Puerto Rico v. Víctor Martínez Ramos y la vista comenzó el lunes día 16 de junio y concluyó el martes 17 de junio de 1952, ante el Honorable Juez Joaquín Correa Suárez y actuando de Fiscal el Honorable Ernesto Mieres Calimano y de defensor el Lcdo. Guillermo Bauzá. —Tercero:—Desfilada la prueba de ambas partes nos retiramos a deliberar en la tarde del 17 de junio de 1952 y en la votación inicial al comenzar las deliberaciones y decir el Sr. Presidente del Jurado, Sr. Soto, *que se pusieran de pie los que creyéramos que el acusado era inocente nos pusimos de pie cinco jurados.* Seguimos discutiendo las deliberaciones y al insistir en la inocencia del acusado los cinco jurados que nos pusimos de pie, bajamos a expresar al Honorable Juez, como lo hicimos a través del mencionado presidente del Panel, que no era posible un acuerdo y que no habría veredicto. *El Hon. Juez nos indicó que la prueba era clara y que podríamos llegar a un veredicto* y al subir por segunda vez a deliberar a la Sala de Deliberaciones insistimos los cinco miembros que defendíamos la inocencia del acusado en que fuera tal el veredicto. Bajamos nuevamente a manifestarle al tribunal la imposibilidad de un veredicto y nuevamente el Hon. Juez a petición nuestra hizo el resumen de los testimonios de Martín Skeret y de la segunda testigo de cargo Doña Natividad Maldonado. Volvimos a la Sala de Deliberaciones y los mismos cinco miembros del jurado insistimos en la inocencia del acusado y que había duda en favor del acusado y al manifestarle nuevamente al Hon. Juez la imposibilidad de llegar a un veredicto, éste indicó que faltando media hora para las seis de la tarde fuéramos nuevamente a deliberar, ya que a las seis, de no haberse llegado a un veredicto iríamos a un hotel a comer y dormir para luego a las nueve de la mañana del día siguiente volver a las deliberaciones; *y al subir nuevamente a deliberar uno de los miembros del jurado que estaba en favor de la inocencia del acusado dijo que tenía que recibir un hijo que venía de Korea esa tarde y que no podía permanecer allí hasta el otro día* y luego vino una votación de diez para condenar y dos para absolver, entre éstos dos, estaba mi voto. Cuarto:—En las deliberaciones arriba mencionadas *uno de los miembros del jurado manifestó que le daba vergüenza bajar a la corte sin un veredicto,* a lo que yo le indiqué que no me daba ninguna vergüenza sosteniendo mi criterio porque es-

taba actuando de acuerdo con mi conciencia, que había cierta duda y esa duda era en favor del acusado. *Otro de los miembros del jurado manifestó que debía rendirse un veredicto porque el juez y el fiscal se iban a enojar, a lo que yo* le indiqué que el Sr. Fiscal Ernesto Mieres Calimano era una persona conocida y amigo mío y que yo tenía un alto concepto de él de honradez y un fiscal competente, pero que aún así no me cambiaba mi criterio como jurado creyendo que había duda en las manifestaciones del perjudicado y del testigo estrella en favor del acusado y que había tenido el honor de conocer al Sr. Juez y tenía un concepto muy alto de él y de su capacidad y que no iba a dar un veredicto en contra de mi conciencia por el hecho de que él se pudiera enojar. Esta manifestación sobre el enojo hecha por uno de los miembros del jurado que insistía en la culpabilidad del acusado debido a la forma en que se deliberó al rendirse el veredicto de culpabilidad me puse de pie y me dirigí al Honorable Juez y le indiqué que me excusara del Panel de Jurado porque me sentía malo y al mismo tiempo incómodo para seguir actuando en ese Panel de Jurado.—Y SIENDO ESTA LA VERDAD, juro la presente hoy día 21 de junio de 1952, en San Juan, Puerto Rico.—(Fdo.) Fermín Pereira.—Affidavit Núm. 9979.— JURADO Y SUSCRITO ante mí por Fermín Pereira, mayor de edad, casado y vecino de Río Piedras, Puerto Rico, a quien doy fé de conocer personalmente hoy día 21 de junio de 1952, en San Juan, Puerto Rico.—(Fdo.) Carlos D. Vázquez, Notario Público.—"

En la vista de la moción de nuevo juicio, el acusado presentó el testimonio del jurado señor Fermín Viera o Pereira, quien se reafirmó en todo lo declarado por él en la declaración jurada escrita que antecede, aludiendo directamente a los señores: Pío Mejías, como el miembro del jurado que había dicho "que le daba vergüenza, bajar a la corte sin un veredicto"; Felipe García como el miembro del jurado que había dicho que "tenía prisa porque tenía que recibir un hijo que venía de Corea esa tarde y que no podía permanecer allí hasta el otro día", al presidente del jurado, señor Antonio Soto, como el miembro del jurado que dijo, que había que rendir un veredicto "porque el juez y el fiscal se iban a enojar". En su testimonio directo, en el incidente del nuevo

juicio, el señor Fermín Pereira declaró: que cuando subieron por tercera vez no hubo discusión de clase alguna, (t. 9–10); simplemente se cambió la votación de 5–7 a 2–10.

Por parte del fiscal declaró el señor Antonio Soto, presidente del jurado, quien manifestó, con relación a la frase que se le atribuye, "en el sentido que había que rendir un veredicto porque el juez y el fiscal se iban a enojar", que lo que se dijo por alguien fué, "que la defensa y el fiscal se sentirían contentos con cualquier veredicto", (t. 15); declaró también el señor Felipe García, quien manifestó, con relación a la frase que se le atribuye, en el sentido que "tenía prisa porque tenía que recibir un hijo que venía de Corea esa tarde y que no podía permanecer allí hasta el otro día", que lo que él dijo fué: "que si alguno debía tener prisa era yo porque vienen unos veteranos de Corea que vienen a las seis o las diez de la mañana", (t. 17); declaró, por último, el señor Pío Mejías, quien manifestó, con relación a la frase que se le atribuye, en el sentido, "que le daba vergüenza bajar a la corte sin un veredicto", que lo que él dijo fué "que no veía la razón para que no llegáramos a un acuerdo, y como ya habíamos bajado varias veces que eso me abochornaba a mí", (t. 19).

Como se ve, la prueba del fiscal tiende más a suavizar que a contradecir lo declarado por el señor Fermín Pereira. Pero deja su testimonio esencialmente comprobado.

La ilustrada Sala sentenciadora declaró sin lugar la moción de nuevo juicio. En apelación ante nos, el acusado y apelante se queja que las manifestaciones del juez que presidió la vista, en el sentido, que "la corte cree que este es un caso claro y que es posible llegar a un veredicto" y "la corte cree que tomando algún tiempo más haya la posibilidad de llegar a un veredicto" constituyeron una especie de coacción psicológica sobre la conciencia de los jurados remisos a la declaración de culpabilidad, que lesionó su derecho a un juicio justo e imparcial.

Generalmente hablando, la manifestación de un juez al jurado que la prueba a éste sometida es clara y no debe haber dificultad en llegar a un veredicto, no es error perjudicial: *Pueblo* v. *Rivera*, 77 D.P.R. 664, (Pérez Pimentel), (1954), cita precisa a la pág. 669. Por otro lado, el período de tiempo, durante el cual, debe deliberar un jurado en una causa criminal, se deja a la sana discreción del juez que preside la vista de la causa. El art. 277 del Código de Enjuiciamiento Criminal de Puerto Rico, con relación a este asunto, dispone, que el período de deliberación, deberá ser el que resulte suficiente para que el juez que preside la Sala llegue a la conclusión, que "no hay probabilidad razonable de que el jurado llegue a un acuerdo". El hecho de mantener a un jurado incomunicado, por un tiempo razonable, rehusando disolver al jurado, aunque el jurado así lo haya solicitado, o de enviar al jurado a ulteriores deliberaciones, aunque el jurado haya informado que no puede ponerse de acuerdo, no resulta, aisladamente considerado, error perjudicial: 85 A. L. R. 1421.

La teoría es que el veredicto debe responder únicamente al proceso mental de los señores del jurado y no debe responder al proceso combinado de los señores del jurado y del juez que preside la Sala (*mixed thoughts*). Se supone que el juez, por ser el funcionario que somete los hechos esenciales de la causa a la consideración del jurado, y les instruye, en cuanto a la ley aplicable al caso, está en una situación de privilegio frente al lego, y cualquiera insinuación suya sobre los méritos de la causa, podría imponerse fácilmente sobre la concepción que de los hechos de la causa, tengan los miembros del jurado: *United States* v. *Link*, 202 F.2d 592, (Kalodner), (1953), cita precisa a la pág. 595; *Pueblo* v. *Bartolomei*, 70 D.P.R. 698, (Negrón Fernández), (1949), cita precisa a la pág. 705.

La regla de buena práctica es que los jueces no deben hacer comentarios sobre los méritos de la causa durante la

vista del caso: 3 Am. Jur. 606, sec. 1055, segundo párrafo. La regla parece ser la misma después de sometida la causa al jurado: *People* v. *Green*, 224 P.2d 406, (Cal.), (McComb), (1950), cita precisa a la pág. 407; *People* v. *Walker*, (Cal.) 209 P.2d 834 (Bray), (1949), cita precisa a la pág. 837; *United States* v. *Samuel Dunkel & Co.*, 173 F.2d 506, (Segundo Circuito), (Clark), (1949), cita precisa a la pág. 509. Hasta cualquiera entonación especial o gesto significativo al comentar la prueba, que pueda demostrarle al jurado como piensa el juez que preside la vista, sobre los hechos de la causa, debe ser evitado: *Billeci* v. *United States*, 184 F.2d 394 (Circuito de Columbia), (Prettyman), (1950), cita precisa a la pág. 401.

Si nosotros fuéramos a decidir este caso por las constancias de lo que sucedió en el momento en que el juez presidió la vista, le ordenó al jurado seguir deliberando, declararíamos sin lugar la apelación interpuesta contra la resolución denegando un nuevo juicio: *Pueblo* v. *Rivera*, supra.

Pero este es un caso inusitado. Creo que es uno de los pocos casos que tal vez existan en la jurisprudencia, donde en la prueba que se presenta en el incidente de un nuevo juicio se puede medir el impacto psicológico que, tanto la orden de volver a deliberar hasta determinada hora, como la inocente manifestación del juez, en el sentido, que se trataba de un caso claro donde era posible llegar a un veredicto, produjo en la mente del jurado. Por lo general, la jurisprudencia sobre esta materia, se ha establecido, tomando como base exclusivamente las manifestaciones del Juez que preside la vista, según éstas aparecen en la transcripción de los autos, y es a base de dichas manifestaciones, que se deduce el efecto coactivo sobre el jurado. Como al jurado no se le permite impugnar las propias conclusiones de su veredicto, resulta realmente inusitada la clase de prueba que tuvo ante sí la ilustrada Sala sentenciadora en el incidente del nuevo juicio. Aunque hemos realizado un verdadero esfuerzo por encon-

trar un caso análogo a este, no hemos podido encontrarlo. Siendo esto así, no tenemos más remedio que considerarlo como un caso singular dentro de su especie, y por tanto, no regido por los principios generales que gobiernan esta situación jurídica.

La prueba en el incidente del nuevo juicio demostró que el jurado estaba dividido cinco a siete, cuando pidió ser disuelto; que solicitó que se le leyeran dos testimonios, que por cierto, resultan los dos únicos testimonios posiblemente incriminatorios; que al volver a deliberar el jurado no pudo llegar a ningún acuerdo y solicitó ser disuelto; que al volver a deliberar, después de escuchar las indicaciones del juez, sin discusión posterior sobre los méritos del caso, se procedió a rendir un veredicto de culpabilidad, mientras los jurados que tenían duda sobre la culpabilidad, hacían manifestaciones, como éstas: "que le daba vergüenza bajar a la corte sin un veredicto", "que tenía prisa porque tenía que recibir un hijo que venía de Corea esa tarde y no podía permanecer allí hasta el otro día", que *"el juez y el fiscal se iban a enojar"*.

Pero hay algo más. Hemos examinado los dos testimonios que solicitó el jurado les fueran leídos por el taquígrafo de la Sala, que por cierto, son los dos únicos testimonios posiblemente incriminatorios, y son tan poco satisfactorios para una convicción fuera de toda duda razonable, que estamos convencidos, que este es un caso, donde la más leve insinuación sobre la suficiencia de la prueba, ha tenido que perjudicar al acusado.

*Debe revocarse la resolución denegando un nuevo juicio y por el contrario, concederse dicho nuevo juicio.*