ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>JULIO MANUEL SANTANA HERRERA<br><br>Apelante | KLAN202200303 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Por:<br>Art. 93A (1er Grado)<br>Art. 5.04 Ley 404 Grave (2000)<br>Art- 5.04 Ley 404 Grave (2000)<br>Art. 5.15(A)(1) Ley 404 Grave<br>Art. 5.15(A)(1) Ley 404 Grave<br><br>Casos Números:<br>KVI2020G007<br>KLA2020G0117<br>KLA2020G0118<br>KLA2020G0119<br>KLA2020G0120 |
|---|---|---|

Panel integrado por su presidenta, la Juez Rivera Marchand, el Juez Salgado Schwarz y la Jueza Díaz Rivera[1].

Díaz Rivera, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece el apelante, Julio Manuel Santana Herrera, y solicita nuestra intervención para revocar una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan el 23 de marzo de 2022. Mediante dicho dictamen, se declaró al apelante culpable y convicto por infringir el Artículo 93 (A) del Código Penal de Puerto Rico del 2012 (Código Penal), 33 LPRA sec. 5142 y los Artículos 5.04 (2 cargos), 5.15 (2 cargos) de la derogada Ley Núm. 404-2000 (Ley de Armas), 25 LPRA secs. 458c, 458n.

Por los fundamentos que expondremos a continuación, se *confirma* la Sentencia apelada.

---

[1] Mediante Orden Administrativa OATA-2022-140 se designa a la Hon. Karilyn M. Díaz Rivera en sustitución de la Hon. Ivelisse Domínguez Irizarry.

Número Identificador

SEN2025_____

**I.**

Surge del expediente de la apelación ante *nos*, que por hechos ocurridos el 21 de julio de 2019, el Ministerio Público presentó cinco (5) acusaciones en contra del apelante, por violaciones al Artículo 93 (A) del Código Penal y los Artículos 5.04 (2 cargos) y 5.15 (2 cargos) de la Ley de Armas.

En síntesis, se acusó al apelante que allá para el 21 de julio de 2019, en concierto y común acuerdo con Juan Keudis Mejías en el Municipio de San Juan, ilegal, voluntaria, criminal, a propósito, y con conocimiento, le dieron muerte al ser humano Juan Carlos Montañez Salamán, al realizarle varios disparos, logrando herirlo en distintas partes del cuerpo. Se le acusó, además, de la portación, uso y transporte de un arma de fuego sin licencia.

Luego del proceso de Desinsaculación de Jurado, el desfile de prueba del Juicio en su Fondo se llevó a cabo los días 12, 16, 17, 18 y 19 de agosto de 2021. La prueba documental de cargo presentada para sostener los cargos imputados consistió en la siguiente: (1) 129 fotos a color (*Exhibit* 1), (2) Croquis agrandado (*Exhibit* 2), (3) Informe de Incidente (*Exhibit* 3), (4) Bosquejo de la Escena del Crimen (*Exhibit* 4), (5) Informe Diario de Incidente (*Exhibit* 5), (6) Informe de Hallazgos de Escena, Croquis reducido (*Exhibit* 6a-6b), (7) Sobre manila tamaño pequeño con título foto y video, CD Fotos de Escena, CD Video de Escena (*Exhibit* 7a-7b), (8) CD en su empaque, Recibo de evidencia División investigación Legal y Toxicológica (*Exhibit* 8a-8b), (9) Foto a color del occiso Juan Carlos Montañez Salamán (*Exhibit* 9), (10) Formulario de Consentimiento de Registro (*Exhibit* 10), (11) Foto a color (*Exhibit* 11), (12) Foto a color del acusado de cuerpo completo (*Exhibit* 12), (13) Disco en su empaque que lee Herido de Bala, Documento titulado Incidente (*Exhibit* 13a-13b), (14) Solicitud de Servicio Forense (Exhibit 14), (15) Ocho casquillos de bala embalados (*Exhibit* 15), (16) Sección Patología Solicitud de

Análisis (*Exhibit* 16), (17) Sobre manila con letras rojas que lee Evidencia (Exhibit 17), (18) Sobre manila empacado (*Exhibit* 18), (19) Recibo de Patología Forense, Identificación de Evidencia (*Exhibit* 19), (20) Continuación de cadena de evidencia (*Exhibit* 20), (21) Continuación de cadena de evidencia (*Exhibit* 21), (22) Recibo de Evidencia (*Exhibit* 22), (23) Muestrario Confrontación Fotográfica (*Exhibit* 23), (24) Muestrario Confrontación Fotográfica (*Exhibit* 24), (25) Muestrario Confrontación Fotográfica tres (*Exhibit* 25), (26) Informe Médico Forense (*Exhibit* 26), (27) CD en su empaque, Quisqueya (*Exhibit* 27), (28) Documento Recibo de Entrega de Evidencia (*Exhibit* 28), (29) Subpoena de 22 de julio de 2019 (*Exhibit* 29), (30) Empaque con tres CD, DVD La Walcherna, La Walcherna 1, La Walcherna 2, (*Exhibit* 30-30A-30B), (31) Recibo de Entrega de Evidencia (*Exhibit* 31), (32) Subpoena de 3 de julio de 2029 (*Exhibit* 32), (33) Empaque con CD, DVD#1 La Terraza, DVD#2 La Terraza (*Exhibit* 33-33A-33B), (34) Empaque con dos CD, DVD#3, DVD#4 (*Exhibit* 34-34A-34B), (35) Empaque con un CD, DVD#5 (*Exhibit* 35-35A), (36) Recibo de Entrega de Evidencia (*Exhibit* 36), (37) Certificación de Examen (*Exhibit* 37), (38) Foto en blanco y negro (*Exhibit* 38), (39) Dibuja Figura Masculina (*Exhibit* 39), (40) Subpoena de 23 de septiembre de 2019 (*Exhibit* 40), (41) Acta Sobre Rueda de Confrontación (*Exhibit* 41), (42) Acta Sobre Rueda de Confrontación (*Exhibit* 42), (43) Acta Sobre Rueda de Confrontación Fotográficas con fecha 18 de diciembre 2019 (*Exhibit* 43), (44) Certificación de Información Registro Electrónico de Armas de Julio Manuel Santana Herrera (*Exhibit* 44), (45) Documento titulado Consulta de Ciudadanos correspondientes a Julio Manuel Santana Herrera (*Exhibit* 45), (46) Documento titulado Consulta de Ciudadanos correspondientes a Juan Keudy Mejías (*Exhibit* 46). Por su parte, la defensa no presentó prueba documental.

Además, el Ministerio Público presentó el testimonio bajo juramento de las siguientes personas: (1) Sra. Melissa Salamán Rivera, (2) Sr. George Salamán Rivera, (3) Sr. Frank William Santiago Rivera, (4) Sr. Darío Fermín Polanco Guerrero, (5) Agte. José Baerga, (6) Sr. Manuel Antonio Quintero, (7) Agte. Ana Quiñones Trinidad, (8) Sr. Obed Dylan Rodríguez, (9) Jorge Aponte Lespier, (10) Sra. Rosa Delia Guerrero López, (11) Sr. Félix Vázquez Olivo, (12) Sra. María Hernández Miranda, (13) Sra. Ivonne Rosario García, (14) Sra. Kiashallys De León Robles, (15) Sr. Murphys Rivera Alicea, (16) Dr. Carlos Fernando Chávez Arias, (17) Agte. Juan Carlos Ramos Maldonado, (18) Sra. Minelly Hernández Huertas, (19) Agte. Eric Ortiz Rodríguez. El Ministerio Público anunció y puso a disposición de la defensa el testimonio del Sr. Laoel Peña Pereira.

Así las cosas, luego de escuchado el testimonio de los testigos presentados por el Ministerio Público y evaluada la totalidad de la prueba documental que tuvo ante sí, el 19 de agosto de 2021, el Jurado emitió un veredicto de culpabilidad en todos los cargos, según imputados. En atención a ello, el 23 de marzo de 2022, el Tribunal de Primera Instancia emitió Sentencia en contra del apelante, imponiéndole la siguiente pena:

(1) En el cargo por el Art. 93 del Código Penal, noventa y nueve (99) años de cárcel;

(2) En los dos cargos por el Art. 5.04 de la Ley de Armas, veinte (20) años de cárcel en cada cargo.[2]

(3) En los dos cargos por el Art. 5.15 de la Ley de Armas, diez (10) años de cárcel en cada cargo.[3]

Las penas impuestas por las violaciones al Código Penal serían concurrentes entre sí, pero consecutivas con las penas

---

[2] El TPI impuso la pena fija de 10 años en cada cargo, más la pena duplicada de conformidad con el Art. 7.03 de la Ley de Armas.
[3] El TPI impuso la pena fija de 5 años en cada cargo, más la pena duplicada de conformidad con el Art. 7.03 de la Ley de Armas.

impuestas por las violaciones a la Ley de Armas. Estas, a su vez, serían consecutivas entre sí, para un total de ciento sesenta y nueve (169) años de cárcel.

Inconforme con la Sentencia, el 22 de abril de 2022, el apelante acudió a este Foro y señaló la comisión de los siguientes errores:

**PRIMER ERROR:**

Erró el Honorable Tribunal de Primera Instancia al crear la impresión indebida en el jurado de que era imposible que no hubiera un acuerdo en la deliberación y que habrían tenido que deliberar hasta que alcanzaran un veredicto de culpabilidad por unanimidad o uno de no culpabilidad por mayoría.

**SEGUNDO ERROR:**

Erró el Honorable Tribunal de Primera Instancia al encontrar culpable al señor Santana Herrera aun cuando no se probó su culpabilidad más allá de duda razonable.

**II.**

**A. Presunción de Inocencia**

El Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II Const. ELA, LPRA, Tomo 1, garantiza a todo acusado de delito, el derecho fundamental a la presunción de inocencia durante todo el proceso criminal. Ese derecho, constituye uno de los imperativos del debido proceso de ley, según lo ha reconocido nuestro más alto Foro en múltiples ocasiones. *Pueblo v. Rodríguez Pagán*, 182 DPR 239 (2011). Además, y de manera más específica, la Regla 110 (F) de Procedimiento Criminal, 34 LPRA Ap. II, dispone que, en los casos criminales, la culpabilidad de la persona debe ser establecida más allá de duda razonable. Es el Ministerio Público, quien tiene la obligación de presentar evidencia para cumplir con la carga probatoria de establecer la culpabilidad del acusado. Dicho de otra forma, el Ministerio Público tiene que probar - más allá de duda razonable – todos los elementos del delito, la intención o negligencia criminal en su comisión y la conexión de

la persona acusada con los hechos. *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000).

No obstante, lo anterior, es necesario señalar que la duda razonable no es una duda especulativa ni se extiende a cualquier duda posible. El Tribunal Supremo de Puerto Rico ha definido como duda razonable, aquella duda fundada que surge como el raciocinio de todos los elementos de juicio envueltos en un caso. Nuestro más alto Foro ha expresado además que, para poder rebatir la presunción de inocencia, el Ministerio Público deberá probar cada uno de los elementos del delito imputado y producir certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Bigio Pastrana,* 116 DPR 748 (1985), *Pueblo v. Cruz Granados,* 116 DPR 3 (1984); *Pueblo v. Irizarry,* 156 DPR 780 (2002).

Ahora bien, en nuestro ordenamiento jurídico, es norma reiterada que, al enfrentarnos a la tarea de revisar la suficiencia de la prueba en convicciones criminales, nuestra función revisora está enmarcada dentro de unas consideraciones que nos limitan. Como sabemos, al momento de revisar las determinaciones que realizan los juzgadores de primera instancia, ya sea Juez o Jurado, debemos otorgarle una gran deferencia en cuanto a la prueba testifical presentada ante ellos. La regla general es que el tribunal revisor no debe intervenir con la adjudicación de credibilidad de los testigos ni sustituir las determinaciones de hechos basadas en las apreciaciones de esa prueba. *Pueblo v. Toro Martínez,* 200 DPR 834 (2018). Además, el veredicto del jurado, como la sentencia del juez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia. *Pueblo v. Figueroa Rosa,* 112 DPR 154 (1992). La norma expuesta, descansa en el hecho de que los foros de instancia están en mejor posición para

evaluar la prueba desfilada, pues tienen la oportunidad de observar y escuchar a los testigos y, por ello, su apreciación merece gran respeto y deferencia. *Pueblo v. Acevedo Estrada, supra*; *Pueblo v. Rosario Reyes*, 138 DPR 591 (1995).

Claro está, a pesar de que la determinación de culpabilidad hecha por el juzgador de los hechos merece gran deferencia, ésta podrá ser revocada en apelación si se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto debido a que la prueba no concuerda con la realidad fáctica o es increíble o imposible. *Pueblo v. Maisonave*, 129 DPR 49 (1991); *Pueblo v. Acevedo Estrada, supra*, pág. 99. Así, pues, a menos que existan los elementos mencionados o que la apreciación de la prueba se distancie de la realidad fáctica o ésta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos. *Pueblo v. Maisonave Rodríguez, supra*.

En el caso *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013), nuestro Tribunal Supremo tuvo la oportunidad de definir lo que es pasión, prejuicio o parcialidad y error manifiesto. A esos efectos, nuestro más alto Foro expresó que se incurre en pasión, prejuicio o parcialidad cuando se actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna." Por su parte, las determinaciones del foro revisado son un error manifiesto si de un análisis de la totalidad de la evidencia, el foro revisor queda convencido de que se cometió un error porque las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida debido a que se distancian de la realidad fáctica o es inherentemente

imposible o increíble. *Dávila Nieves v. Meléndez Marín, supra,* pág. 772.

Finalmente, en cuanto a la cantidad de prueba requerida para sostener una convicción, es necesario acudir a la Regla 110 de Evidencia, 32 LPRA Ap. VI. Conforme al inciso (D) de dicho precepto reglamentario, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley." Por ello, el testimonio de un sólo testigo - de ser creído por el juzgador de los hechos - es suficiente para sustentar una convicción; toda vez que no se trata de un análisis de cantidad.

### B. Regla 144 (c) de Procedimiento Criminal

La Constitución del Estado Libre Asociado de Puerto Rico consagra el derecho al juicio por jurado que tiene toda persona que sea acusada por la comisión de un delito grave. Art. II, Sec. 11, Const. E.L.A, *supra.* El derecho a tener un juicio justo e imparcial no es otra cosa sino el derecho del acusado a un juicio con las garantías del debido proceso de ley y la gama de derechos procesales que cobijan al acusado. E. L. Chiesa, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa,* 1era Ed., San Juan, Ediciones SITUM, 2018, pág. 54. No obstante, no se reconoce un derecho a un juicio perfecto. *Pueblo v. Santiago Lugo,* 134 DPR 623 (1993). Por ello, la Regla 144 de Procedimiento Criminal 34 LPRA Ap. II contiene las instancias en que se puede disolver el jurado. En lo pertinente al caso ante nuestra consideración, la Regla 144 (c) de Procedimiento Criminal, 34 LPRA Ap. II, establece que:

> El tribunal podrá ordenar la disolución del jurado en los siguientes casos:
> (a) ...
>
> (b) ...
> (c) Si la deliberación se prolongare por un lapso de tiempo que el tribunal estimare suficiente para concluir de una manera clara y evidente no haber

posibilidad de que el jurado pudiera llegar a un acuerdo.

(d) ...

(e) Por cualquier otra causa si las partes consintieren en ello.

En todos los casos en que el jurado fuere disuelto según lo previsto en esta regla, la causa podrá ser juzgada nuevamente. Además, la Regla 150 de Procedimiento Criminal 34 LPRA Ap. II dispone que:

> "El jurado podrá rendir un veredicto o tantos veredictos como fueren necesarios respecto a uno o más de los cargos de la acusación o a uno o más de los acusados incluidos en la misma, sobre cuya culpabilidad o inocencia estuviere de acuerdo. Si el jurado no pudiere llegar a ningún acuerdo respecto a cualquier cargo o acusado, el tribunal podrá ordenar un nuevo juicio en cuanto a dicho cargo o a dicho acusado".

Sin embargo, la disolución del jurado antes del veredicto también constituye una excepción a la prohibición que dispone la Carta de Derechos de nuestra Constitución, que dice: "[n]adie será puesto en riesgo de ser castigado dos veces por el mismo delito". Art. II, Sec. 11, Const. ELA, *supra. Pueblo v. Guzmán Camacho,* 116 DPR 34 (1984).

Cabe destacar que, la decisión sobre si procede o no ordenar la disolución del jurado, recae sobre el Juez que preside los procesos. Tan es así, que nuestro más alto foro ha expresado que dicha determinación merece gran deferencia por parte del foro revisor ya que el foro primario es quien está en mejor posición para evaluar las circunstancias que ameriten o no la disolución del jurado. *Pueblo v. Rodríguez Santana,* 146 DPR 860 (1998). Así pues, de existir una base razonable para su denegatoria, un tribunal revisor no intervendrá con la denegatoria de una solicitud de disolución de jurado. *Pueblo v. Vélez Díaz,* 105 DPR 386 (1976).

### C. Instrucciones al Jurado

Es norma reiterada en nuestro ordenamiento jurídico que las instrucciones al jurado constituyen el mecanismo procesal mediante el cual los miembros del Jurado toman conocimiento del derecho aplicable al caso. *Pueblo v. Rodríguez Vicente*, 173 DPR 292 (2008), citando a E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Vol. II, Editorial Forum, Colombia, 1992, p. 330. En vista de que el jurado, de ordinario, está compuesto de personas desconocedoras de las normas jurídicas vigentes en nuestro ordenamiento jurídico, el magistrado que preside el proceso tiene el deber ineludible de instruir a sus miembros sobre el derecho aplicable al caso y de velar que las instrucciones impartidas sean correctas, precisas y lógicas. Ello asegura, además, que el desenlace del proceso adversativo, cualquiera que fuere, esté guiado por el derecho y los hechos. *Pueblo v. Rodríguez Vicente*, 173 DPR 292 (2008); *Pueblo v. Acevedo Estrada*, 150 DPR 84 (2000); *Pueblo v. González Colón*, 110 DPR 812 (1981).

En términos generales, el acusado tiene el derecho a que se informe al jurado de todos los aspectos del Derecho que, según cualquier teoría razonable, pudieran ser pertinentes en las deliberaciones, aunque la prueba de la defensa sea débil, inconsistente o de dudosa credibilidad. *Pueblo v. Negrón Ayala*, 171 DPR 406 (2997). Entre los distintos aspectos que deben incluirse en las instrucciones al jurado se encuentran los elementos del delito imputado y, si la prueba así lo justifica, los elementos de los delitos inferiores al imputado o que estén comprendidos dentro de éste. Además, el tribunal deberá hacer hincapié en que el Ministerio Público tiene la obligación de establecer todos los elementos del delito más allá de duda razonable. *Pueblo v. Rosario*, 160 DPR 592 (2003).

A esos efectos, la Regla 137 de Procedimiento Criminal, 34 LPRA Ap. II, provee para que, antes de que el jurado se retire a deliberar, el Ministerio Público y la defensa soliciten instrucciones especiales al foro primario. Esta regla establece, además, las consecuencias de no efectuar una oportuna solicitud u objeción. Sobre el particular, dispone que:

> **"...Ninguna de las partes podrá señalar como error cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ellas o solicitare instrucciones adicionales** antes de retirarse el jurado a deliberar, exponiendo claramente los motivos de su impugnación, o de su solicitud. (Énfasis suplido)

En otras palabras, la precitada regla impide que se alegue error en instrucciones no objetadas ni solicitadas. *Pueblo v. Velázquez Caraballo,* 110 DPR 369, 372 (1980). No obstante, si las instrucciones que efectivamente transmitió el tribunal a los señores del jurado, o aquellas que omitió transmitir, "lesionan derechos fundamentales del acusado", éste en apelación puede levantarlo como error a pesar de no haberlas objetado oportunamente". *Pueblo v. Ortiz Martínez,* 116 DPR 139, 151 (1985). Ante una apelación impugnando las instrucciones impartidas a un Jurado, hay que considerar las instrucciones en conjunto para determinar su corrección o incorrección. *Pueblo v. Dómenech Meléndez,* 98 DPR 64, 68 (1969).

Finalmente, debemos señalar que en nuestro ordenamiento jurídico, un error del tribunal al impartir las instrucciones al jurado no acarrea la revocación automática de una sentencia, si el error no es perjudicial o no se demuestra que violara derechos fundamentales o sustanciales del acusado. Véase: *Pueblo v. Torres Rodríguez,* 119 DPR 730 (1987).

**III.**

En su primer señalamiento de error, el apelante alega que erró el Tribunal de Primera Instancia al crear la impresión indebida en el jurado de que era imposible que no hubiera un acuerdo en la deliberación y que habrían tenido que deliberar hasta alcanzar un veredicto de culpabilidad por unanimidad o no culpabilidad por mayoría.

En el caso ante nos, luego de varias horas en deliberación, el jurado solicitó ser llevado ante la consideración del tribunal. Una vez en corte abierta, peticionó una instrucción "sobre la posibilidad de no llegar a un acuerdo y no marcar nada en el encasillado que indica veredicto."

En respuesta, el tribunal impartió la siguiente instrucción:

> "Para que haya un veredicto de culpabilidad tienen que los doce estar de acuerdo, tiene que ser unánime, y en la hoja de veredicto marcan "culpable" y "unanimidad."

> "Para que haya un veredicto de no culpabilidad sea válido por lo menos por lo menos nueve de ustedes tiene que estar de acuerdo, no tiene que ser unánime. Nueve a tres, diez a dos, once a uno, o por unanimidad. Si determinan que el acusado es no culpable en uno o más delito, "no culpable", por unanimidad o por mayoría de votos. Si es por mayoría me tienen que informar la cantidad que está de acuerdo con ese veredicto, sin son nueve a tres, diez a dos u once a uno, porque yo necesito saber si se llegó a la mayoría."

> "Entonces, hasta que no tengan los votos para los veredictos según se les ha instruido no hay veredicto, el caso no queda en el aire. Tienen que emitir un veredicto, y tienen que continuar deliberando hasta que lleguen a un veredicto. Ustedes determinarán si para ello es necesario regresar a sala, escuchar la parte de un testimonio, la totalidad de un testimonio, que yo les repita las instrucciones, que les aclare algún punto de derecho. Ustedes determinaran qué ustedes necesitan para llegar a un veredicto." [4]

Sin embargo, luego de revisar detenidamente la transcripción de la prueba oral y según lo reconoce en su escrito, no surge que la defensa del apelante haya objetado tal instrucción. Ante ello,

---

[4] Véase, TPO Juicio día cinco, págs. 127 - 128.

debemos recordar que, según señalamos anteriormente, como regla general una parte no podrá señalar como error en apelación cualquier porción de las instrucciones u omisión en las mismas a menos que planteare su objeción a ella. Por tal razón, debemos auscultar si en el presente caso, se cometió un error perjudicial o se violó algún derecho fundamental o sustancial del apelante. Veamos.

Si bien es cierto que, minutos después de la instrucción, el jurado llegó con un veredicto de culpabilidad en contra del apelante, ello no implica que el veredicto fuese influido por las instrucciones impartidas por el tribunal. El hecho de enviar al jurado a ulteriores deliberaciones, aunque el jurado haya informado que no puede ponerse de acuerdo, no resulta aisladamente considerado un error perjudicial. *Pueblo v. Martínez,* 79 DPR 586 (1956). Además, el tribunal podrá ejercer su discreción ordenando la continuidad de las deliberaciones si estimaba que aún existía la posibilidad de que el jurado llegase a un acuerdo. *Pueblo v. Vélez Díaz,* 105 DPR 386 (1976).

En resumen, el hecho de que el tribunal haya instruido a los miembros del jurado a deliberar hasta votar y emitir un veredicto no fue un factor determinante en el veredicto de culpabilidad en contra del apelante ni violó un derecho fundamental de éste. Como reseñamos, la decisión sobre si procede o no ordenar la disolución del jurado, recae sobre la discreción del Juez que preside los procesos. Pues, el foro primario es quien está en mejor posición para evaluar las circunstancias que ameriten o no la disolución del jurado. *Pueblo v. Rodríguez Santana,* 146 DPR 860 (1998). En el presente caso el tribunal dentro de su discreción decidió instruir a los miembros del jurado para que continuaran deliberando. Por tanto, concluimos que no se cometió el error señalado.

Como segundo señalamiento de error, el apelante arguye que erró el Tribunal de Primera Instancia al declararlo culpable cuando

no se probó su culpabilidad más allá de duda razonable. Fundamentó que la prueba presentada por el Ministerio Público es inconsistente. Pues, la testigo ocular del Estado declaró que el apelante y el señor Mejías cada uno portaba un arma de fuego. Sin embargo, la evidencia encontrada en la escena y en el cadáver del occiso demuestra que solo se utilizó un arma para dar muerte al señor Montañez Salamán. Detalle que demuestra la mendacidad de la testigo ocular.

Por su parte, el Ministerio Público afirmó que, mediante prueba directa y circunstancial, probó más allá de duda razonable cada elemento de los delitos graves que el apelante cometió, a saber: el delito de asesinato en concierto y común acuerdo con el señor Mejías. Además, el uso y portación de un arma de fuego sin licencia.

El Artículo 92 del Código Penal de Puerto Rico[5], define el asesinato como "dar muerte a un ser humano a propósito, con conocimiento o temerariamente". Además, el Artículo 93 (a)[6], tipifica el asesinato en primer grado como "todo asesinato perpetrado por medio de veneno, acecho tortura, a propósito, o con conocimiento". En esencia, para establecer el delito de asesinato el Ministerio Público debió establecer que: (1) se le dio muerte a un ser humano y (2) que se le dio muerte a propósito o con conocimiento.

Según surge de la TPO, la testigo ocular del Ministerio Público, la señora León Robles declaró lo siguiente:

R: Antes de doblar me queda a mano izquierda. Cuando yo doblo… justamente cuando doblo, que me toca de frente, que me toca doblar la calle, pues vienen estos dos caballeros con dos armas en la mano.[7]

P: ¿Dos…dos armas en la mano?[8]

---

[5] 33 LPRA sec. 5141.
[6] 33 LPRA sec. 5142.
[7] Véase, TPO Juicio día dos, pág. 331, líneas 21-24.
[8] Véase, TPO Juicio día dos, pág. 334, línea 16.

R: Cada uno, uno la tenía de este lado y el otro la tenía en la mano derecha.[9]

R: [...] Cada uno tenía un arma en la mano derecha porque yo logré ver en ese momento.[10]

P: ¿Qué mano?

R: En la mano... estira la mano derecha, la cual le había describido (sic) que él tenía el arma, él estira la mano derecha y le disparó en el brazo a Juanqui. Yo vi la herida del brazo de Juanqui...se cae, se cogió el brazo y se cayó al piso.[11]

P: ¿Quién le disparó a Juanqui en ese momento?[12]

R: El acusado, el que había describido (sic) con el pantalón vino.[13]

De igual forma, el Dr. Chávez Arias, patólogo forense quien realizó la autopsia del señor Montañez Salamán. Testificó que el occiso tuvo ocho heridas de balas designadas por las letras A, B, C, D, E, F, G, H. Además, una herida superficial a la cual no se le designó letra.[14] El perito describió cada una de las heridas y finalmente, concluyó que la causa de muerte del señor Montañez Salamán fue homicidio por herida de bala.[15]

En el presente caso, la señora León Robles declaró que observó al apelante con el arma de fuego en la mano. A su vez, detalló el momento exacto cuando el apelante en común acuerdo con el señor Mejías le propició un disparo al occiso. Sabido es que, "[l]a evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa

---

[9] Véase, TPO Juicio día dos, pág. 335, línea 17.
[10] Véase, TPO Juicio día dos, pág. 335, líneas 24-25.
[11] Véase, TPO Juicio día dos, pág. 341, líneas 21-25.
[12] Véase, TPO Juicio día dos, pág. 342, línea 1.
[13] Véase, TPO Juicio día dos, pág. 342, líneas 2-3.
[14] Véase, TPO Juicio día tres, pág. 156, líneas 17-22.
[15] Véase, TPO Juicio día dos, pág. 169, líneas 1-6.

se disponga por ley."[16] Por ello, el Tribunal Supremo ha resulto que, el testimonio de un testigo principal, por sí solo, de ser creído, es suficiente en derecho para sostener un fallo condenatorio. *Pueblo v. Chéverez Heredía*, 139 DPR 1 (1995). En el presente caso, el jurado tuvo la oportunidad de escuchar y presenciar el testimonio de la señora León Robles. A raíz de ello, el jurado les otorgó entera credibilidad a las declaraciones de la testigo acerca de los hechos ocurridos el 21 de julio de 2019. Hechos que culminaron en la muerte del señor Montañez Salamán.

Por otra parte, el Artículo 5.04 de la Ley de Armas de 2000[17], *supra*, establece que: "[t]oda persona que transporte cualquier arma de fuego o parte de ésta, sin tener una licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, incurrirá en delito grave. A su vez, el Artículo 5.15 (A)(1) de la Ley de Armas[18], *supra*, dispone que: Incurrirá en delito grave toda persona que [...]: (1) voluntariamente dispare cualquier arma en un sitio público o en cualquier otro sitio, aunque no le cause daño a persona alguna.

En el caso de autos, la señora León Robles testificó que logró ver al apelante con el arma de fuego en la mano derecha.[19] Por otra parte, el Agente Ortiz Rodríguez, quien investigó los hechos ocurridos el 21 de julio de 2019. Declaró que, revisó las cámaras de seguridad de los negocios Quisqueyana, La Terraza y la Guacherna, -colindantes a la calle donde ocurrieron los hechos- y ahí observó al apelante, bajarse de un vehículo con el señor Mejías quien portaba un arma de fuego.[20]

Por otro lado, el Agente Ortiz Rodríguez declaró que realizó una búsqueda en el sistema de división y control de armas de fuego.

---

[16] Regla 110 de Evidencia, 32 LPRA Ap. VI.
[17] 25 LPRA sec. 458c.
[18] 25 LPRA sec. 458n.
[19] Véase, TPO Juicio día dos, pág. 335, líneas 24-25.
[20] Véase, TPO Juicio día dos, pág. 312, línea 2.

En la cual, corroboró que el apelante no tenía licencia para portar armas.[21]

En conclusión, al evaluar el dictamen apelado no encontramos que haya mediado pasión, prejuicio o parcialidad, o que se incurrió en error manifiesto por lo cual no encontramos razón para intervenir con el mismo.

**IV.**

Por los fundamentos anteriormente expuestos los que hacemos formar parte del presente dictamen, se confirma la Sentencia apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Salgado Schwarz vota conforme y hace la siguiente expresión:

"No existe nada, ni en las instrucciones al jurado sobre la unanimidad del veredicto, o el testimonio de la testigo ocular que amerite nuestra intervención con la sentencia apelada. En específico, la instrucción cuidó, en todos sus extremos, el debido proceso de ley del convicto".

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[21] Véase, TPO Juicio día dos, pág. 82, líneas 18.